DeFrancesco, Appellant, *v.* DeFrancesco, Appellant.

Argued March 7, 1955. Before RHODES, P. J., HIRT, ROSS, WRIGHT, WOODSIDE, and ERVIN, JJ. (GUNTHER, J., absent).

*Pauline G. Evansha,* with her *Israel T. Klapper,* for plaintiff.

*James Lenahan Brown,* with him *Daniel J. Flood, Joseph V. Kasper,* and *Flood & Brown,* for defendant.

OPINION BY HIRT, J., July 21, 1955:

The parties were married on October 17, 1946. The plaintiff left the marital domicile on or about February 27, 1948 and has not lived with the defendant since then. He brought this action in divorce in April 1952 on the single charge of indignities. The master recommended a divorce on that ground. The court however sustained defendant's exceptions to the master's findings and dismissed the plaintiff's complaint. The order will be affirmed.

To winnow relevant facts from the mass of testimony in this case, in many respects repetitious and inconsequential, has not been free from difficulty. We however have read the three volumes of testimony in the original record with as much patience as we could muster, and after an independent consideration of all

of it, the conclusion persists that the plaintiff has neither disclosed that he is an injured and innocent spouse nor has he met the burden upon him of showing a course of conduct on the part of his wife which rendered his condition intolerable and his life burdensome. Plaintiff's testimony does not supply that "clear proof of imperious reasons" necessary to the dissolution of a marriage. *Politylo v. Politylo,* 173 Pa. Superior Ct. 223, 95 A. 2d 241. This was an unhappy marriage but as was said by Judge RENO in *Hartley v. Hartley,* 154 Pa. Superior Ct. 176, 178, 35 A. 2d 591: "The regrettable fact that married people do not get along together does not authorize us to loosen them from the bonds of matrimony." The frictions incident to the marital unhappiness in this case do not support the husband's charge of indignities.

We will refer briefly to the incidents upon which the plaintiff places his principal reliance. Defendant had lived with her mother in an apartment at 512 East Broad Street in Hazelton and after the marriage the plaintiff came to live with them there. Defendant then ceased her professional activity as a registered nurse and the apartment became the marital domicile of the parties until their final separation. Shortly after the marriage plaintiff bought a property, without objection from his wife, which he intended as their future home. Defendant subsequently questioned the suitability of its location in Hazelton and because of the excessive estimated cost of alterations and repairs to the house which she considered necessary, plaintiff disposed of the property. This may have been a disappointment to the plaintiff but defendant's conduct in relation to the property did not amount to an indignity even though plaintiff may have sustained a loss on the sale of it. She considered it "a shack" unsuitable for a home without substantial rehabilitation. Moreover her

objections to the property came within the early period of her pregnancy when plaintiff concedes that she was irritable because of her condition.

Plaintiff owned and operated a taxi business in Hazelton and he also conducted a private detective agency. The two enterprises according to his testimony demanded his attention daily from 11:00 a.m. to 4:00 a.m. on the following day. He was comparatively free only during one day in each week. There was some ground for the defendant's periodic complaints that he was neglectful of her.

Plaintiff owned a Boeing airplane. On January 29, 1948 he left on a pleasure trip with one James Richards who also was a licensed pilot. He did not tell his wife of his contemplated vacation until the day he left nor did he tell her how long he would be away. He was absent for four weeks during which he traveled more than 8000 miles. He communicated with his wife but once while away from home and then by telephone on the evening of the day on which he left. He testified that on his return he intended to resume living with his wife. Instead he moved to the home of his mother where he has since lived apart from the defendant.

The wife may have at times expressed dissatisfaction with the standard of living established by the plaintiff but financial matters were not a source of serious controversy between them. The wife spent much of the $1,000 which he gave her as a wedding gift for furniture for their joint use. He gave her $50 per week to run the house and he testified that only on rare occasions did she ask for more. After leaving her, he stopped the weekly payments in June 1949. In a non-support action brought by her, at his suggestion, the court subsequently ordered him to pay her $95 per month. There was no appeal from this order and it has been complied with.

Plaintiff complained that defendant on a number of occasions referred to his friends as "bums, parasites and leeches." These statements were made for the most part in the heat of argument after the separation of the parties when their relations were strained. But there was some foundation for the aspersion that his friends imposed upon him. In his taxi-cab business he bought a new automobile about every four months, which he invariably turned over to a Mr. Ecker to drive as his own, without charge, for the period of about the first 1,000 miles. Ecker was a garage man who kept plaintiff's fleet of taxis in repair. He had the gratuitous use of one of plaintiff's cars so continuously that he did not find it necessary to acquire an automobile of his own. Plaintiff testified that he loaned $4,400 to a Maurice Llewellyn when he was a candidate for public office and also turned a Cadillac automobile over to him. He had no security for the loan and he received very little in repayment of it or to apply on the consideration for the transfer of the title to the Cadillac car. There is also an admission on plaintiff's part that he contributed $3,000 in addition to his friend's political campaign. Although these transactions occurred after the separation it gives support to the wife's criticism of him in relation to his friends, particularly in the light of his plea of poverty in this case.

Defendant's charges of infidelity imputed to her husband were not wholly unjustified under the circumstances. Plaintiff admitted that intimate relations with his wife ended in September 1947. Although not supported by evidence, defendant suspected that he was intimate with his secretary, a Miss Irovando, who had been in his employ for many years and who was seen with him almost daily in his automobile. She also was in the home of the Eckers on numerous occasions when the plaintiff came to the house. Although it was con-

tended that plaintiff was there because of business dealings with Ecker and that Miss Irovando's presence was coincidental, yet plaintiff on many occasions remained long enough to join in a game of cards with his secretary and the Eckers. They also were together under like circumstances at the Ecker's summer place. Anonymous telephone calls to the defendant were to the effect that plaintiff was having intimate relations with other women. She sincerely believed that her husband was unfaithful to her and while he was away on his airplane trip she went to her priest for comfort and advice because of her suspicions. She found lipstick on his handkerchief on one occasion. The wife's suspicions were not wholly unreasonable and the charges of infidelity did not constitute indignities under the circumstances. Cf. *Priest v. Priest,* 162 Pa. Superior Ct. 232, 57 A. 2d 437; *Philo v. Philo,* 154 Pa. Superior Ct. 563, 568, 36 A. 2d 833; *Klimkosky v. Klimkosky,* 167 Pa. Superior Ct. 116, 74 A. 2d 497.

This case has one unusual aspect. We have frequently said that in support of the charge of indignities there must be evidence from which an inference of settled hate and estrangement on the part of the defendant in the action may be inferred. Cf. *Monaco v. Monaco,* 160 Pa. Superior Ct. 117, 50 A. 2d 520. This element of proof (though conceivably not essential in every case) is entirely lacking here. Plaintiff admitted that after the separation he made no effort at any time to see his wife. On the other hand defendant frequently sought her husband out and asked him to return to her. She went to his office for that purpose and frequently saw him at his mother's home where he lived. He testified that her request was always the same: "Let's sit down and talk this over . . . Let's start over again under any conditions." He said: "It was the same story day in day out." and he refused her re-

quests. He was annoyed by her efforts to get him to come back to her and he stressed her conduct in that endeavor as an indignity. There was settled hate and estrangement in this case but it was in the mind of the plaintiff and not his wife.

We have ignored many of the 35 particulars set forth in plaintiff's Bill in support of his complaint, as too trivial for comment. Plaintiff's testimony as to other complaints either exaggerates their significance or is incredible in its entirety. After reading the extended record in this case we find ourselves in complete agreement with the opinion of the lower court in which Judge PINOLA, after a thorough review of the salient facts, concluded, as we have, that plaintiff has not met the burden upon him of proving his case by a preponderance of clear and satisfactory evidence. This case in principle has much in common with *Coon v. Coon*, 173 Pa. Superior Ct. 60, 95 A. 2d 344. It is also clear that plaintiff is not an injured and innocent spouse.

The order in No. 14 February Term, 1955, is affirmed.

Defendant petitioned the court for additional counsel fees in the sum of $2,750 and for the allowance of $750 more for expenses. About $500 of the amount claimed for expenses was not chargeable to the plaintiff. The court ordered the payment of additional counsel fees in the sum of $500 and $250 for costs and expenses. Both the defendant and the plaintiff have appealed from the order. Defendant contends that the court allowed too little; plaintiff says he was ordered to pay too much.

On the rule for counsel fees and expenses testimony was taken in an effort on the part of the defendant to cast doubt on the bona fides of plaintiff's sale of his airplane and of his taxicab business. There is some

foundation for the suspicion. He was active in the management of the taxicab business after the alleged sale. And after parting with title to the Boeing airplane which he contends resulted in a loss of $8,000, he still had the use of it, as before, and he paid for some repairs to it. He contended that his sole source of income was from his detective agency, the gross earnings of which, according to his testimony was but $761.21 for the year 1953. The income which he admits is wholly inadequate to support the office which he maintains in Hazelton with a secretary and two part-time employees. In our view the net worth of plaintiff is in excess of $10,500, the amount found by the lower court. He is still able to pay the amounts fixed in the present order and they are not excessive as to him.

We do not question the time and effort expended by defendant's counsel in defending the divorce action. Eight hearings were held in that action alone which evoked the comment of Judge PINOLA that "the record has been needlessly and wastefully swollen by repetitious and all too frequently, impertinent testimony." Both counsel are responsible for the unwarranted result. This was a divorce case which in the main fell into a routine pattern. No new law was involved and the factual issues were governed by the credibility of the parties and their witnesses. Even this question did not present any difficulty in the proofs. Plaintiff's credibility was seriously affected by his effort to conceal his resources. The comparative weight of the testimony of the parties themselves was clearly in favor of the wife.

However the total amount of counsel fees and expense money received by the defendant, was substantial. The plaintiff under various orders paid defendant a total of $1,300 in counsel fees and $450 for costs and expenses. In addition the plaintiff paid a fee of $500 to

the master and $518.15 for stenographic services. In our view the total paid by the plaintiff in the divorce case, exclusive of fees which he paid to his own counsel, amounting in all to almost $2,800, is as much as should be required of him under the circumstances. Cf. *Brong v. Brong,* 129 Pa. Superior Ct. 224, 195 A. 439.

The orders in Nos. 15 and 16 February Term, 1955, are affirmed.