## Thoms, Appellant, *v.* Thoms.

Argued September 12, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*George S. Pressman,* with him *Samuel E. Dennis,* and *Dennis, Lichtenstein, Cohen & Dennis,* for appellant.

*Francis T. Anderson,* with him *John Patrick Walsh,* for appellee.

OPINION BY ERVIN, J., November 15, 1962:

The appellant, William W. Thoms, instituted an action in divorce against the appellee, Margaret S. Thoms, on the grounds of indignities and desertion. The master recommended that the complaint be dis-

missed. The court below entered an order dismissing the complaint.

The parties were married February 13, 1926 and, with the exception of two short separations, resided together at various addresses in the City of Philadelphia until June 16, 1957, when the appellant left the marital abode. The appellant at the time of the hearing was 60 years of age and his wife 55 years of age, and they are the parents of an adult son, who is married and does not live with either of the parties.

The appellant testified that the wife on numerous occasions accused him of infidelity and called him a "dirty bum" and other opprobrious names. Her conduct was persisted in for a sufficient length of time and is strong enough to make out a case of indignities if the testimony of the husband and his witnesses is believed. On the other hand, the wife's conduct may be excused and does not constitute indignities if her suspicions were "reasonably aroused": *Coon v. Coon*, 173 Pa. Superior Ct. 60, 64, 95 A. 2d 344; *Miln v. Miln*, 175 Pa. Superior Ct. 613, 616, 106 A. 2d 862; Freedman, Law of Marriage and Divorce in Pa., Vol. 2, 2d ed., at p. 725.

The appellant admitted that he went around with one Ethel Welsh and took her to night clubs and to Atlantic City for a period of time after he first met her in 1930. He also admitted frequently taking Margaret Wurster to night clubs and race tracks. He also admitted going to her home in Blackwood, New Jersey, 50 times and staying at her home 10 or 12 times over weekends. He admitted kissing her and having lipstick on his shirt and on his handkerchiefs. He admitted carrying a picture of her daughter in his wallet. All of this went on for a long period of time while his wife sat home alone. He admitted introducing Margaret Wurster's sister-in-law to Mrs. Julie Hucke's husband and admitted that Mrs. Hucke came to his home and

charged him of this in the presence of Mrs. Thoms. While it is true he denied having sexual intercourse with any other woman, it is equally true that he gave his wife just reason to believe that he was having illicit affairs with these women. Her accusations and her name calling, therefore, may not be considered as indignities to the appellant.

On the charge of desertion, appellant alleges that in 1930, during the depression, he went to New Jersey to get a job and asked his wife to accompany him. She refused to do so because she did not want to lose the job which she then held as a weaver in Philadelphia. She did, however, spend every weekend with her husband in Pleasantville, New Jersey. After approximately seven months the husband returned to Philadelphia and procured another job and the parties again lived together in Philadelphia.

In 1952, on another occasion, the appellant left his wife for a period of eight or nine days because she asked him to leave. He admits that she requested him to come back and he did so and the parties again resumed living together after the break of eight or nine days.

On June 16, 1957 appellant left his wife and has not returned since. The appellant testified that he had been down to the shore and that he came home Sunday night, June 16, about twelve o'clock, after having stopped at the American Legion for a few drinks. He says that he was greeted at the garage door by a request to take his clothes and get out. He said that he went upstairs and got some more of his clothes and then left. He admits that about two weeks after leaving he received a letter from his wife saying that she was ill and he says that he then returned to the home and took her to the hospital for tests. She remained in the hospital about five days and even when he was taking her home from the hospital, he testified that the

wife said: "If there is another woman involved, you can bring that woman home and I will live with her." He said: "There is no woman involved," and she said, "Well, I am satisfied to live with her." He admitted that his wife asked him to come back, both by letter and by telephone, during the first three or six months after the final separation. He never answered the letters and he refused to return to his wife.

The wife testified that on the Sunday morning of June 16, 1957, at about 7:30 or 8:00 o'clock in the morning, her husband took his bathing suit and left the house without telling her where he was going and that she did not see him until about 12:30 that night. She admitted that she put his shoes in a bag and packed his clothes in suitcases. She also admitted that she told him, "I can't take any more of this. There are your clothes." He got some more of his clothes from upstairs and put them in the car and drove off. She testified that for a year and a half she called him on the telephone and wrote letters to him requesting him to return and that he never did do so nor did he reply to any of her letters.

In *Rankin v. Rankin,* 181 Pa. Superior Ct. 414, 426, 124 A. 2d 639, we said: "In Reiter v. Reiter, 159 Pa. Superior Ct. 344, 48 A. 2d 66, Judge (now Mr. Justice) ARNOLD enunciated certain rules for guidance in considering 'this type of case where the guilty spouse extrudes the innocent spouse from the common habitation'. He said, 'In the type of desertion now discussed the libellant must be wilfully and maliciously put out by force or justifiable fear of immediate bodily harm, or locked out against the will, and without the consent, of the innocent spouse'." This was not a lockout case nor was it one where the party was put out by force or justifiable fear of immediate bodily harm. The leaving, therefore, does not constitute a constructive desertion. In addition to that, both parties admitted that

the wife on numerous occasions, after the final separation, requested her husband to return and he refused to do so. We are of the opinion that the appellant failed to prove a willful and malicious desertion.

The appellant filed a separate appeal questioning the right of the court below to make an order requiring him to pay costs in the amount of $250.00 and additional counsel fee in the amount of $750.00. The principal contention of the appellant is that the court could not make an order without taking evidence by depositions or otherwise. He filed an answer to the petition for counsel fee denying his financial ability to provide for the payment of counsel fee and costs. The ability to pay, of course, is an important and determining factor in a proceeding for counsel fee and expenses: *Orsuto v. Orsuto,* 171 Pa. Superior Ct. 532, 91 A. 2d 284; *Shuman v. Shuman,* 195 Pa. Superior Ct. 155, 170 A. 2d 602.

In the present case, however, the parties have stipulated that plaintiff husband is employed as a sales manager for Dietz & Watson, meat dealers, at a weekly salary of $175.00 and that his take-home pay after taxes is $140.22 weekly; that bonuses are declared by his employer only when profits warrant them and that the last bonus received by plaintiff was in the amount of $1,500.00 for the year 1959. This stipulation took the place of evidence and no hearing was required to show appellant's earning capacity. The court also knew that this case was vigorously contested by the parties and that the master held seven hearings and that the record runs to approximately 600 pages of testimony.

The court also was aware of the support proceedings which had been held in the Municipal Court (now County Court) of Philadelphia County and that an order of $50.00 per week had been made against the husband by that court and that the wife lived in the en-

tireties property and paid the monthly mortgage charges and taxes out of the support money. The court also knew that the wife was 55 years of age and had not been employed for a considerable period of time.

The court had knowledge of the relevant factors, upon which a determination as to counsel fee and costs could be decreed. In *Shuman v. Shuman*, supra, at p. 157, we said: "No standard is fixed for determination of the amount of counsel fee other than the requirement that it must be reasonable. Consideration must be given to the husband's ability to pay, to the wife's necessity, and to the extent of her separate estate. See Freedman, Law of Marriage and Divorce, Second Edition, Section 465.

" 'How much shall be allowed as alimony and for counsel fees and expenses is a matter of judicial discretion and the validity of the order depends upon the proper exercise of that discretion. . . .' Brong v. Brong, 129 Pa. Superior Ct. 224, 195 A. 439."

We do not believe that there was any abuse of discretion by the court below in fixing the order for counsel fee and costs.

Orders affirmed.