## Tarbuck, Appellant, *v.* Tarbuck, Appellant.

Argued November 10, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Sanford S. Finder,* for husband plaintiff.

*Stephen I. Richman,* with him *Greenlee, Richman, Derrico & Posa,* for wife defendant.

OPINION BY MONTGOMERY, J., December 16, 1964:

This is an appeal by wife-defendant from a decree awarding the husband an absolute divorce on the grounds of indignities. The appellant questions the sufficiency of the evidence to sustain the grounds on which the divorce was granted and contends particularly that the only evidence of indignities consists of events occurring subsequent to the filing of the complaint, except the uncorroborated testimony of the husband, which the appellant alleges was denied and shaken and was, therefore, insufficient.

On appeal we are obliged to review the record and make an independent determination of whether the evidence warrants a decree. The master's report, although advisory only, is to be given the fullest consideration in regard to the credibility of witnesses, whom he has seen and heard. *Liscio v. Liscio,* 203 Pa. Superior Ct. 83, 198 A. 2d 645 (1964). The master in this case determined that the husband and his witnesses were credible and that the evidence was sufficient to sustain the decree which he recommended. The lower court agreed with the master's finding on credibility and entered the decree. This appeal followed.

Our review of the record indicates that the evidence is sufficient to show conduct by defendant which amounts to indignities under the law of this Commonwealth. In making this determination we have taken into account the fact that the parties continued to live in the same house after the alleged indignities occurred. However, it is not a prerequisite for one who had been sued for divorce on the grounds of indignities that he withdraw from the common abode. *Liscio v. Liscio,* supra; *Horton v. Horton,* 170 Pa. Superior Ct. 209, 85 A. 2d 602 (1952).

Considering the evidence of the husband and his witnesses to be credible, we find the following facts: The parties were married August 21, 1954, at which

time the husband was 20 and the wife, 23 years of age. Two years after their marriage they built a new home in suburban Washington, Pennsylvania, where they continued to live until their separation in July of 1963. There was one child of the marriage, a son, born April 25, 1958. The relationship of the parties was normal for approximately seven years or until Christmas of 1961, when it became strained. From that time until the complaint in divorce was filed on February 13, 1963, the husband describes the events as follows:

"My wife claimed she was always looking for something, trying to find something on me. So, I came home from work one day and my wife told me she found something in the truck and I asked her what it was. She said she had found a pack of contraceptives, which she claimed belonged to me. I had two different guys driving truck for me at the time. So, from then on there was trouble every day. Every day I would come home from work there were accusations and so on and so forth. I kept always denying it and telling her it wasn't nothing that belonged to me. So, from then on she started to not wanting to wash my clothes, wouldn't cook any meals, didn't want to clean. It was day in and day out that way."

Appellee testified to numerous incidents and examples of appellant's alleged behavior that, although uncorroborated because they took place in the privacy of their home, if believed, could be taken into consideration as constituting indignities. We shall not attempt to exhaust this subject; however, he testified that as early as Christmas of 1961 his wife accused him of infidelity, hit him with a shoe, threw an aluminum Christmas tree at him and scratched his face; that his wife was always breaking things and threw stools and chairs at him; that she threatened him with a paring knife once and that, in response, he slapped her only once to control her behavior; that she would not per-

mit him to use his own car and threatened him twice with a knife and would also get under the wheels of the car to prevent his driving it.

However, appellee did produce witnesses who corroborated a substantial portion of his testimony to the effect that prior to the separation of the parties (1) appellant was scurrilously abusive towards him and called him opprobrious names, (2) that appellant made unfounded accusations of infidelity, and (3) that appellant ridiculed him in the presence of his friends, employer, and fellow employes.

Accompanying alleged scurrilities and vulgarities, which regrettably are found frequently in the transcripts of testimony in contested divorce actions, appellant commonly referred to appellee as "whoremaster" in the presence of third persons, and even, as alleged by appellee, in the presence of their child. Appellant admitted that she used this term only in "little arguments" in private with her husband. However, a number of witnesses for appellee testified specifically on this point. Richard Shrontz, a friend of appellee, testified that prior to the filing of the divorce action he had overheard appellant in this regard when appellee telephoned him from the Tarbuck home. Paul Barry Swart, whose station appellant telephoned seven times one day in April, 1963, to check on her husband's whereabouts, also corroborated this testimony. A Miss Rose Ciccocioppi testified that in March of 1963 appellant telephoned her, accused appellee of infidelity, and "said something pretty filthy." In the third week of April, 1963, after the filing of this divorce action, Richard Shrontz, Thomas Hobub, and Paul Barry Swart, in the role of eavesdroppers outside the home of appellant, heard her use reproachful, abusive, and opprobrious language, including the common word previously referred to, towards the appellee. We think that this testimony was admissible, over defendant-

appellant's objection, as evidence of the fact that defendant-appellant was accustomed freely to use such language.

As previously stated, appellant was making accusations of infidelity towards her husband as early as 1961. Prior to the filing of this divorce action appellant, besides accusing her husband directly, telephoned Mrs. Frances Shrontz and accused her husband, Richard Shrontz, of interfering with her marriage and at the same time accused appellee of infidelity. Appellant admitted that she had told Mrs. Shrontz prior to the filing of the divorce action that she suspected her husband of "running around." Continuous unfounded accusations of infidelity, accompanied by other degrading or humiliating conduct persisted in sufficiently long, is sufficient grounds for divorce for indignities. *Thoms v. Thoms,* 199 Pa. Superior Ct. 369, 186 A. 2d 42 (1962).

Finally, appellee testified that appellant called his employer's place of business and informed the employes there that appellee at times was not working. Appellant admitted that on one occasion when the plant manager, Vice President John Wilson, was in her home, she told him that her husband was getting his hair cut on company time. She did not specifically deny Mr. Wilson's testimony to the effect that she also said that her husband was not so good as they thought he was.

This was a heatedly contested action and it is not surprising that much of the husband's testimony was denied by the wife. However, we note in passing on the question of credibility that many of her statements were unsupported by corroborating witnesses and are general and extreme in character.

We conclude that there is sufficient evidence of events prior to the filing of the divorce which, although denied, is not completely without corroboration and is not shaken to the extent that it is insufficient to sus-

tain the decree. The husband-appellee has met his burden of establishing by the fair weight of the evidence that his wife's actions toward him have consisted of vulgarity, unmerited reproach, intentional incivility, manifest disdain, abusive language, and other plain manifestations of settled hate and estrangement and that they have been of a continuous nature so as to render his condition intolerable and his life burdensome; and further, that he has established himself as an innocent libellant entitling him to a divorce. The foregoing is in connection with the appeal at No. 209 April Term, 1964.

The appeal in No. 265 April Term, 1964, has been taken by the husband from an order dated September 3, 1964, granting the wife counsel fees and expenses in the amount of $500 to be used by her in prosecuting her appeal in this Court. Previously the husband had paid $650 for counsel fees and expenses; however, he had paid prior to this appeal only $500 for alimony pendente lite, which is the only money paid for the support of his wife since their separation.

It is the husband's contention that the additional $500 is excessive in view of his financial condition and earning power. He earns approximately $85 per week in net income in his employment as a driver-salesman for Albert Packing Company. His gross earnings for the year 1963 were $5,905.12. Whether counsel fees and expenses are to be allowed in divorce cases and the amount thereof are within the discretion of the court below. Appellate courts do not interfere in the absence of a clear showing of an abuse of discretion. We find no such abuse in the present case. *McCormick v. McCormick*, 202 Pa. Superior Ct. 250, 195 A. 2d 851 (1963).

The appeal at No. 209 April Term, 1964, by the wife is dismissed and the order of the court granting a decree in divorce is affirmed.

The appeal at No. 265 April Term, 1964, by the husband from the allowance of additional counsel fees and expenses is likewise dismissed and the order is affirmed.