Yohey *v.* Yohey, Appellant.

330

Argued March 15, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*I. B. Sinclair,* for appellant.

*Anthony R. Semeraro,* for appellee.

OPINION BY JACOBS, J., April 15, 1965:

This is an action in divorce which was begun by the husband, Rollin E. Yohey. After two hearings the master recommended a divorce on the grounds of indignities to the person and desertion, the two grounds

alleged in the complaint. The wife, Helen Gertrude Yohey, filed exceptions to the master's report which were dismissed by the court and a decree of divorce a.v.m. entered. The wife has appealed to this court.

In the court below and here the wife-defendant claims that the Court of Common Pleas of Delaware County did not have jurisdiction to hear the case and that the grounds for divorce were not made out.

The objection of the wife-defendant to jurisdiction is not to jurisdiction of the person nor to jurisdiction of the subject matter arising from a one year's residence in Pennsylvania but rather to the venue of the Delaware County Courts on the basis that it was not shown that the plaintiff resided in Delaware County at the time he filed his complaint. We have carefully examined the testimony and agree with the court below that the record clearly shows that the plaintiff came to live in Delaware County in June, 1957, long before the complaint was filed in 1962, and that he had continued to live in Delaware County to the time of the master's hearings. So far as the testimony shows, the plaintiff is still residing in Delaware County. In addition, the defendant has waived the right to object to venue. While the one year domiciliary requirement that a plaintiff reside in Pennsylvania for a period of one year immediately prior to filing his complaint in divorce cannot be waived, the venue of a county to hear the case is waived by the entry of a general appearance, by requesting a bill of particulars and by petitioning for counsel fees and alimony pendente lite, all of which were done by the defendant in this case. *Chasman v. Chasman*, 161 Pa. Superior Ct. 77; *Blair v. Blair*, 195 Pa. Superior Ct. 406.

In determining whether or not the plaintiff has shown grounds for divorce when the case has been heard by a master it is our duty to review the testimony and make our own finding. *Nacrelli v. Nacrelli*, 288 Pa. 1; *Boyer v. Boyer*, 183 Pa. Superior Ct. 260.

The parties in this case were married on November 21, 1940. They apparently got along fairly well together for a short time and then the treatment of which the plaintiff complains began. The gist of his complaint is that his wife constantly called him vile and opprobrius names and falsely accused him of having sexual relations with other women. This conduct on her part continued all of their life together. Many of the name calling episodes and false accusations took place in the presence of other people, the plaintiff claims. He also accuses his wife of other acts, such as her refusal to give him a key to the apartment in which they lived, locking him out of their house at night and keeping him out for hours and then when she finally admitted him into the house yelling at him so loudly as to disturb the neighbors. Some of the name calling he alleges occurred in a beer garden where many people were present, and in front of a hotel in Berwick, Pennsylvania, where many people were present. He also claimed that she didn't talk to him for an entire year and that he was locked out of his house at least ten times. The plaintiff was corroborated in part of his testimony by a neighbor who had known the parties from 1946 to 1952. The corroboration covered the constant name calling by the defendant and her frequent accusations of infidelity on the plaintiff's part. The witness' testimony corroborated the plaintiff's assertion that he never fought with the defendant and never swore. The plaintiff claimed that he was quite embarrassed and his nerves were affected by the defendant's treatment.

The defendant's own testimony convinced the master and the court below and convinces this court that she did constantly call the plaintiff vile names and did falsely accuse him of infidelity. She herself admitted that she did call him some of the vile names of which he complained but denied that she had called

him the most objectionable ones. She admitted that she accused him of infidelity, but claimed that the accusations were justified. However, she could not point to a single instance where she had more than a slight suspicion. There was no concrete evidence of any misconduct on the part of the plaintiff. Defendant carried her suspicions to extreme lengths when she said that she hid the plaintiff's camera because she was afraid he would take pictures of somebody else instead of his own family. She admitted that one night in Berwick she stayed out all night in order that the plaintiff couldn't get in the house when he went home. She admitted that she beat up another woman because that woman was lighting a cigarette for her husband while he was working on the pump in the other woman's cellar. She admitted that the plaintiff supported the family very well when they lived together. She admitted that she had only seen the plaintiff drunk once in his life. She was further of the opinion that "when a man would go out once on a woman he would go out all the time". Her daughter, who testified in her behalf, admitted that her mother swore "but not quite as bad as they put it".

Continually through the married life of the parties the defendant used vile and abusive language toward the plaintiff thereby ridiculing and embarrassing him in the presence of others and demonstrating her disdain for him. We have not cluttered up this opinion with the words used by the defendant but they are well known words of vulgarity whose import cannot be mistaken. She further made groundless accusations of infidelity against her husband. These she persisted in through the years of their marriage. The conduct of the defendant in constantly calling her husband vile and abusive names falls within the definition of indignities as so often laid down by our courts, as consisting of "vulgarity, unmerited reproach, habitual

contumely, . . . intentional incivility, manifest disdain, abusive language, malignant ridicule". *D'Alessandro v. D'Alessandro,* 187 Pa. Superior Ct. 194 at 200. Further, continuous unfounded accusations of infidelity, when accompanied by other degrading or humiliating conduct, are sufficient to make out a case of indignities to the person. *Politylo v. Politylo,* 173 Pa. Superior Ct. 223.

In his complaint the plaintiff also alleges that the defendant on or about December 25, 1957, deserted him and has continued in said desertion for a period of more than two years. This he alleges in the words of the statute. The plaintiff's testimony shows that he left the home of the parties in Columbia County on June 20, 1957 and went to Chester, Delaware County, Pennsylvania, where he got a job on July 1, 1957 and rented a house there on that same date. This house was located at 229 Hayes Street, Chester. It is a five room house and the plaintiff lives in it alone. Two weeks later the plaintiff went home to Columbia County and asked the defendant to move with the children to the house in Chester. This he says she refused to do. Between July 1, 1957 and Christmas Day, 1957 he says that he begged and begged them to come to Chester but she would give him no reply. On Christmas Day he alleges that he returned to Columbia County and asked his wife to come to Chester and she refused. He has never asked her since that time to come to Chester and she has never at any time offered to come. The defendant testified that plaintiff never asked her to come to Chester and that he sent her a note on November 20, 1959 saying that he was never coming back and asking what she thought of a divorce. The parties never lived together or cohabited after December 25, 1957.

It is undisputed that the plaintiff took a job in Chester, Pennsylvania, and rented a five room house

there where he has continued to live at least to the time of the hearing before the master in this case. The master found as a fact that the plaintiff did request the defendant to come and live with him as late as December 25, 1957. While a master's findings of fact are advisory only so far as the court below and this court are concerned, where the issue is one of credibility and the master is the one who heard and observed the witnesses, his findings should be given fullest consideration. *Green v. Green,* 182 Pa. Superior Ct. 287. We agree with the master on this finding of fact.

A husband has the right to change his home if his work, his comfort, or even if his convenience requires it, and if the home is suitable and the choice made in good faith and the wife refuses to join him, without reasonable cause, her refusal constitutes desertion. *Kowalchick v. Kowalchick,* 187 Pa. Superior Ct. 201. The defendant has given no reason whatsoever for refusing to join her husband other than to say that he didn't ask her and we have found that she was incorrect in that regard. The wife makes no effort to dispute the suitability of the home. She gets no assistance from the note which she alleges she received from the plaintiff on November 20, 1959. There was no duty on the plaintiff to leave his job and return to Columbia County and he was not required to seek a reconciliation. The duty was on the defendant to join her husband in the home he had furnished. The note can not be interpreted as a consent to the desertion so as to make it simply a separation because it was in no way a refusal of an offer of reconciliation which the defendant was required to make if she wished to break the desertion nor did it close the door to a reconciliation.

The testimony indicated that the plaintiff had made up his mind sometime during the two year period that he didn't desire a reconciliation. This was not known to his wife and does not give her a defense. Where

such attitude is not communicated to the deserting spouse during such period it does not constitute consent to the desertion nor justify the deserting spouse's failure to seek a reconciliation. *Winner v. Winner*, 122 Pa. Superior Ct. 382.

Decree affirmed.