## Hastings *v.* Hastings, Appellant.

316

Argued December 14, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*James E. O'Neill, Jr.*, with him *Rogers & O'Neill*, for appellant.

*John J. Duffy*, with him *Lentz, Cantor, Kilgore & Duffy*, for appellee.

OPINION BY SPAULDING, J., June 16, 1967:

This is an action in divorce brought by the plaintiff husband alleging indignities to the person. The master's recommendation that plaintiff's prayer be denied was overruled by the court below which granted an absolute divorce. Defendant appeals.

To support a divorce decree on the grounds of indignities, the plaintiff has the burden of showing a course of conduct by the other party which rendered his condition intolerable and life burdensome. *Nichols v. Nichols,* 207 Pa. Superior Ct. 220, 217 A. 2d 807 (1966). Although the master's report is entitled to careful consideration in the area of credibility, *Tarbuck v. Tarbuck,* 204 Pa. Superior Ct. 569, 205 A. 2d 709 (1964), on appeal we must ". . . make an independent investigation of the evidence . . . to determine whether in truth it does establish a legal cause for divorce." *Nichols v. Nichols,* supra, at 222.

Plaintiff and defendant were married January 18, 1946 and two children were born of the marriage: Kathleen on November 17, 1946 and Francis Michael on August 17, 1949. All resided together in Pennsylvania until July of 1963 when, at defendant's request, plaintiff left and established separate quarters.

Plaintiff's allegation of indignities is based on defendant's conduct occurring after September 1962. He complains defendant publicly humiliated him on three occasions. In December 1962, the parties attended a cocktail party at the home of mutual friends and plaintiff observed defendant in the kitchen embracing and kissing another man. Later in December at a New Year's Eve party in their home, defendant was reclining on a chaise lounge with one of their neighbors. During a formal dinner in May 1963, she was seen sitting on another man's lap.

Defendant contradicted plaintiff's version of the three incidents. She categorically denied the kitchen

episode and the man she allegedly embraced testified: "At no time do I recall kissing Ann [defendant] as is alleged . . . . However, I don't deny it might have happened . . . . I would say it was a very casual thing." Regarding the New Year's Eve party, defendant stated she sat at the foot of the chaise lounge and was in no way familiar with their neighbor, Dr. Brillaud. Brillaud testified that other women sat there during the evening and described the incident as one of "strictly sociability". As to the formal dinner, defendant said: "I was sitting on a gentleman's knee. There was someone sitting on my knee . . . we were engaged in a discussion. There was nothing untoward in the entire incident. There was, as far as I can see, a gross misunderstanding of the situation on the part of Mr. Hastings." The master was justified in discrediting these allegations of plaintiff in favor of defendant's explanations.

However, plaintiff made the following allegations which were not contradicted. We find that in September 1962, after four months of psychiatric treatment, defendant advised plaintiff that she preferred not to have sexual relations with him. Subsequently, she stated that part of her problems were due to the fact that she never loved him, did not love him then, and to engage in sexual intercourse with him was tantamount to prostitution. The parties ended their sexual relations. Thereafter, defendant refused to communicate with plaintiff, with the exception of necessary household matters and displayed little interest in associating with plaintiff on social occasions. She frequently told him he was an inadequate husband and father, that she did not love him and married him only at her mother's insistence. On one occasion, she said she married him only for financial security.

Defendant's hostility towards plaintiff became particularly apparent during the summer of 1963. On

numerous occasions she told him to "go to hell" and called him a "bastard" and "son of a bitch". She had never used these terms in the first sixteen years of their marriage. In July 1963, she advised plaintiff she no longer wished to continue a marital relationship with him and insisted that he leave the house. Plaintiff moved out of their home the following week. In August, the parties entered into an agreement for separation and support of defendant and the two children. After March 1964, defendant frequently called plaintiff to demand additional money. She told him there were ways to get more money and, if he did not contribute, she would use them.

Although we have frequently said there is no exclusive definition of conduct which will constitute indignities, it is clear that they "may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement. . . ." *Giuffre v. Giuffre,* 187 Pa. Superior Ct. 154, 156, 157, 144 A. 2d 477 (1958) ; *Schware v. Schware,* 192 Pa. Superior Ct. 166, 168, 159 A. 2d 568 (1960).

We conclude the repeated cursing and use of vile names by defendant toward plaintiff; disparagement of his adequacy as a husband and father; statements that she had never loved plaintiff but married him only at her mother's insistence and for financial reasons; statements that continued sexual relations with plaintiff were very distasteful and that submission made her feel like a prostitute;[1] long and repeated refusals to communicate with plaintiff except about necessary

---

[1] In *Arnold v. Arnold,* 128 Pa. Superior Ct. 423, 427, 428, 194 Atl. 229 (1937), we said: "Another circumstance which added to the unhappy relation was the denial of sexual intercourse by the wife. This we have held is not an indignity to the husband, yet to some extent it explains the irritable nature of the husband."

household matters; and her insistence that plaintiff leave the marital abode, clearly indicate that love and affection had been permanently replaced by hatred and estrangement. Defendant's course of conduct rendered plaintiff's condition intolerable and life burdensome.

Decision affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

I respectfully dissent.

After carefully reviewing the record in this case, I cannot agree that the husband's rather vague and indefinite testimony justifies the granting of a divorce on the ground of indignities. This is especially true when I consider that the husband's testimony relates only to a ten month period in a seventeen year marriage. Moreover, the master, whose report is entitled to careful consideration in the area of credibility, recommended that plaintiff's prayer be denied.

Weighing these added factors, I conclude that our Commonwealth's interest in preserving marriages should not be subverted by reference to unimportant events which, in my opinion, have been magnified beyond all credibility. We should not depart from the well established rule that a court should not enter a decree based on a slight preponderance of the evidence, but should refuse the divorce unless the plaintiff establishes his charge by proof that is clear and satisfactory. *Oliver v. Oliver*, 172 Pa. Superior Ct. 600, 94 A. 2d 124 (1953).

WRIGHT, J., joins in this dissenting opinion.