369 A.2d 1310

**Russel Eugene BONAWITZ, Appellant,**

v.

**Marjorie J. BONAWITZ.**

Superior Court of Pennsylvania.

Submitted March 1, 1976.

Decided Dec. 15, 1976.

258

Arthur K. Dils, Harrisburg, for appellant.

George W. Gekas, Melman, Gekas & Nicholas, Harrisburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This is an appeal from an order of the court below sustaining exceptions to a master's report and dismissing an action for divorce a vinculo matrimonii. After careful review of the record before us, we affirm the order of the lower court.

Russel and Marjorie Bonawitz were married on September 26, 1954, in Harrisburg. Two children, presently

20 and 17 years of age, were born to this marriage. On February 4, 1974, the appellant filed a complaint in divorce, alleging indignities to the person.[1] After conducting a hearing,[2] a master recommended that a decree in divorce be granted.

We must initially note that it is our duty, on appeal, to make an independent examination of the record and to determine whether a legal cause of action for divorce exists. *Barr v. Barr*, 232 Pa.Super. 9, 331 A.2d 774 (1974); *Arcure v. Arcure*, 219 Pa.Super. 415, 281 A.2d 694 (1971). Moreover, we are acutely aware that where the issue is one of credibility and the master is the one who heard and observed the witnesses, his findings of fact and recommendation should be given the fullest consideration. *Gehris v. Gehris*, 233 Pa.Super. 144, 334 A.2d 753 (1975); *Sells v. Sells*, 228 Pa.Super. 331, 323 A.2d 20 (1974). However, our review, even in this light, does not lead us to the same conclusion as the master and we must reject his finding that the credibility of the appellant would sustain the granting of this divorce.

It is axiomatic that a husband seeking a divorce on the ground of indignities must clearly and satisfactorily prove not only that his wife's course of conduct rendered his condition intolerable and his life burdensome, but also that he was the innocent and injured spouse. *E. g., Nichols v. Nichols*, 207 Pa.Super. 220, 217 A.2d 807 (1966); *Staffieri v. Staffieri*, 197 Pa.Super. 443, 179 A. 2d 663 (1962). The appellant complained that the appellee had, among other things, scratched his neck with her fingernails, thrown objects at him, cursed him and his relatives, driven a scissors beneath one of his fingernails, destroyed part of his property, threatened to kill him, and unjustly accused him of infidelity. There is no ques-

1. Act of May 2, 1929, P.L. 1237, § 10 *as amended* by the Act of March 19, 1943, P.L. 21, § 1 (23 P.S. § 10(f)).

2. The master's hearing consisted of three sessions which were held within a two month period.

tion that these actions, if clearly proven, " . . . con-
sist of such a course of conduct as is humiliating, degrad-
ing and inconsistent with the position and relation as a
spouse," *McKrell v. McKrell,* 352 Pa. 173, 180, 42 A.2d
609, 612 (1945); *see Steinke v. Steinke,* 238 Pa.Super.
74, 357 A.2d 674 (1975) (Concurring Opinion by Spaeth,
J.), and would therefore support a decree in divorce based
on indignities. However, we agree with the lower court
that the appellant did not meet his burden of proof.

■ Although the appellant's testimony limns a per-
verse pattern of marital misconduct, it was denied or
qualified by the appellee and her son, and therefore
presents an uncertain balance of evidence. The appellee,
corroborated by her son, testified that as between the
parties it was the appellant, rather than she, who had di-
rected physical force and vile language against the other.
The appellee admitted that she had accused the appellant
of infidelity. We recognize that "continuous unfounded
accusations of infidelity, when accompanied by other de-
grading or humiliating conduct, are sufficient to make
out a case of indignities to the person." *Yohey v. Yohey,*
205 Pa.Super. 329, 334, 208 A.2d 902, 904–05 (1965).
Here, however, the appellee claims that her accusations
were justified, and therefore do not constitute indigni-
ties. We agree with this contention.

■■ The appellee and her son testified that prior to
1969, when the parties separated,[3] the appellant would
not return home until 3:00 or 4:00 in the morning al-
though he finished work at 11:00 p. m. He also spent
several weekends away from home. On occasion, prior
to 1969, he was seen accompanied by, and "holding
hands" with, one Elizabeth Russell. Often, the appel-

---

**3.** There is some dispute as to whether the parties actually sepa-
rated in 1969 or at some later date. The master concluded "the
true final separation" occurred in February, 1969. We agree with
the lower court that the exact date of separation has no rele-
vance to a determination of the legal questions presented in this
case.

lant's car was parked in front of Mrs. Russell's house. Significantly, both the appellant and Mrs. Russell admitted that they had begun to associate socially subsequent to 1969. Although Mrs. Russell cryptically described their relationship as involving "suppers and stuff," the appellant acknowledged that he and Mrs. Russell had travelled together to Canada. As we have previously stated: " 'Evidence of the conduct of the parties after separation is relevant for the purpose of shedding light upon their behavior prior to the separation.' Such testimony, therefore, might certainly strengthen the proof of the appellant as to good grounds for her belief of his infidelity." *Jones v. Jones,* 189 Pa.Super. 461, 465, 151 A. 2d 643, 645 (1959), *quoting,* in part, *Boyer v. Boyer,* 183 Pa.Super. 260, 267, 130 A.2d 265, 269 (1957). This is particularly true where the questioned relationship involves the same person before and after separation. *Kramer v. Kramer,* 194 Pa.Super. 538, 168 A.2d 624 (1961). Notwithstanding the appellant's contentions to the contrary, we find that he had given the appellee just reason to believe that he was involved illicitly with another woman. The appellee's accusations may not therefore be considered as indignities to the appellant. *See, e. g., Yohey v. Yohey, supra; Thoms v. Thoms,* 199 Pa.Super. 369, 186 A.2d 42 (1962). The appellee denied all other alleged indignities.

In *Friess v. Friess,* 156 Pa.Super. 38, 39 A.2d 151 (1944), we were presented with a situation greatly similar to the case at bar. In affirming a rejection by the lower court of a master's recommendation to grant a divorce on the ground of indignities, we stated that:

"However damaging the libellant's testimony touching this period, since it is denied by the respondent and her daughter, it creates only a doubtful balance of evidence. 'A decree may be supported by the testimony of the complainant alone, but if this testimony be contradicted and shaken by the respondent and there be

no convincing circumstances warranting a disregard of the contradictory evidence, a case has not been made out.' " *Id.* at 43, 39 A.2d at 153, *quoting, inter alia, Rommel v. Rommel,* 87 Pa.Super. 511, 513 (1926).

A divorce may not be based upon a doubtful balance of the evidence. *Walper v. Walper,* 198 Pa.Super. 409, 182 A.2d 209 (1962). Here, the appellant's testimony was corroborated only to a slight degree by one witness and was contradicted by the appellee and her witness. We agree, therefore with the court below that the appellant failed to carry his burden of proof in establishing indignities as a ground for divorce.

Furthermore, we find the lower court to be correct in its conclusion that the appellant has not shown himself to be an innocent and injured spouse, as required by statute. We have held that a party should not be denied a divorce merely because he or she is not wholly without fault. *See Sells v. Sells, supra,* and cases cited therein. In the present case, however, the evidence shows that both parties have equally contributed to their marital discord. Neither party, therefore, may claim to be an innocent or injured spouse.

We affirm the order of the lower court.

SPAETH, J., files a concurring opinion.

HOFFMAN, J., files a dissenting opinion in which WATKINS, President Judge, joins.

SPAETH, Judge, concurring:

In *Coxe v. Coxe,* 246 Pa.Super. 231, 369 A.2d 1297 (1976), I concluded that in reviewing the record of a divorce case that turned on credibility we should act as follows:

If we do not take "de novo" too literally, and if we make an earnest effort to give the master's findings on credibility "the fullest consideration," I think that at

least in most cases we shall not miss the mark by much. If in a given case, we conclude to reject the master's findings, we should explain in detail the basis of our rejection. Thereby we shall avoid, at least as much as possible, the danger of making an arbitrary decision.

Dissenting opinion at ——.

Here, the majority has not explained in detail why it has rejected the master's findings. I nevertheless agree with the majority's conclusion that the findings should be rejected. My explanation is as follows.

No decision regarding credibility is involved. As indicated by the majority at page 262 of its opinion, appellant himself and Mrs. Russell both gave testimony that showed plainly enough that appellant had been unfaithful to appellee. The master's error was in failng to recognize that appellee's accusations were therefore justified, and so could not constitute indignities.

I admit that to a certain extent this conclusion arises from an independent review of the record. However, as I discussed in *Coxe,* we are obliged to make an independent review, so long as we recognize the limitations inherent in the fact that we have not seen the witnesses. To conclude here that no divorce should be granted does not transgress those limitations but rather represents, I submit, a proper discharge of our responsibility.

HOFFMAN, Judge, dissenting:

I dissent.

Once again, the master has recommended a divorce in favor of the husband-plaintiff. The master credited the husband, rejected the wife-defendant's account, and recommended a divorce. The lower court, after reviewing the evidence, sustained the exceptions and dismissed the complaint. On that basis, the court, which, of course, had no opportunity to see the witnesses or to assess their credibility, substituted its own judgment for that of the master.

Once again, this Court affirms. We are rightly wary of substituting our judgment for that of a lower court in those instances in which it has a particular area of expertise. However, in this case, the lower court substituted its judgment for that of the master when the relevant issue was properly resolved by the factfinder in the first instance. Therefore, I renew my objection to overturning a master's finding after the master has had an opportunity to resolve issues of credibility. *Coxe v. Coxe,* 246 Pa.Super. 231, 369 A.2d 1297 (1976) (Dissenting Opinion by HOFFMAN, J.); *Dougherty v. Dougherty,* 235 Pa.Super. 122, 339 A.2d 81 (1975); *Gehris v. Gehris,* 233 Pa.Super. 144, 334 A.2d 753 (1975).

I would reverse, dismiss the exceptions to the master's report, and grant the decree in divorce.

WATKINS, President Judge, joins in this dissenting opinion.