420 A.2d 667

**John DUKMEN**

v.

**Laverne DUKMEN, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1978.

Filed June 20, 1980.

Lester Krasno, Pottsville, for appellant.

Steven Kachmar, Schuylkill Haven, for appellee.

Before PRICE, SPAETH and WATKINS, JJ.

WATKINS, Judge:

This is an appeal from the order of the Court of Common Pleas of Schuylkill County, Civil Division, by the defendant–appellant, Laverne Dukmen, from a final decree granting her husband a divorce based upon indignities to the person.

Testimony was heard by a master on June 11 and 30, 1976. The master filed a report recommending that a divorce be granted, and the lower court accepted the report, entering a divorce decree on June 6, 1977. On June 27, 1977, the wife filed notice of appeal to this Court. On July 12, 1977, however, the lower court granted the wife's petition for reargument, and on July 25, 1977, heard additional testimony by the parties. On December 30, 1977, the lower court affirmed its original decree, and on January 26, 1978, the wife filed a second notice of appeal.

Although they are raised by neither of the parties, of the lower court, we are troubled by the procedural irregularities that accompany this case. The lower court's order of July 12, 1977, granting appellant's petition for reargument was filed more than thirty (30) days after the divorce decree of June 6, 1977. Under *Pa.R.A.P. 903(a)* and *1701(b)(3)* the lower court had until July 6, 1977, to file an order granting reconsideration (which was the effect of its order granting reargument); after that date, it lacked jurisdiction to conduct further proceedings. *Strickler v. United Elevator Co., Inc.,* 257 Pa.Super. 598, 391 A.2d 614 (1978); *Provident National Bank v. Rooklin,* 250 Pa.Super. 194, 378 A.2d 893 (1977). Because the lower court lacked jurisdiction to enter its order of July 12, 1977, and to conduct the hearing held on July 25, 1977, the order entered on December 30, 1977,

affirming the original divorce decree of June 6, 1977, was a nullity. It follows that appellant could not properly take an appeal from the order of December 30, 1977. However, the only appeal that has been perfected is the wife's appeal from the order of December 30, 1977. Her appeal from the original divorce decree of June 6, 1977, has never been perfected, for, as we are informed by our Prothonotary, her notice of appeal from that decree has not been docketed with this Court as required by *Pa.R.A.P. 907.* In these circumstances, we must dismiss the wife's appeal from the order of December 30, 1977. The question then arises of what to do with her appeal from the original divorce decree of June 6, 1977.

The wife's failure to perfect her appeal from the original divorce decree of June 6, 1977, does not deprive us of the power to decide the appeal on the merits. *Pa.R.A.P. 902* provides:

"Failure of an appellant to take any step other than the timely filing of a notice of appeal [with the clerk of the lower court] does not affect the validity of the appeal, but it is grounds only for such action as the appellate court deems appropriate, which may include dismissal of the appeal."

See also, *Township of South Fayette v. Commonwealth,* 477 Pa. 574, 385 A.2d 344 (1978) (Commonwealth filed timely notice of appeal in lower court but failed to file concurrent notice with SupremeCourt; held: appeal would not be dismissed as appellee was not injured by failure and no bad faith present).

■ In considering what action should be "deem[ed] appropriate," we have noted the following factors. First, the husband has not moved pursuant to *Pa.R.A.P. 1971* to dismiss the appeal because of the wife's failure to comply with our rules of appellate procedure; nor has he alleged that he has been prejudiced by the wife's non–compliance with our rules. Second, the wife's non–compliance has not hindered this Court in considering the merits of the appeal. The wife's second appeal—the appeal from the lower court's order of December 30, 1977–was properly docketed with our

Prothonotary. Thus, the procedural deficiencies accompanying the first appeal became technical deficiencies only, without substantive effect, for the issues sought to be raised on both appeals are identical. Finally, the record is complete: we have an opinion of the lower court; both parties are represented; and the appeal has been briefed. In combination these several factors persuade us that the appropriate action for us to take is to decide the appeal from the original divorce decree of June 6, 1977, on the merits. To dismiss the appeal finally would have the effect of penalizing the wife for the lower court's unauthorized procedure of conducting the further hearing; to dismiss the appeal temporarily, while the wife perfected it, would serve no substantive purpose, and would further delay a case already too old.

Where one spouse has offered indignities to the person of the injured and innocent spouse so as to render the other spouse's condition intolerable and life burdensome then the injured spouse has sufficient grounds for a divorce. *23 P.S. 10(f).* "Indignities" as a ground for divorce, may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement. *McKrell v. McKrell*, 352 Pa. 173, 42 A.2d 609 (1945). Furthermore, to be the "innocent and injured spouse" for purposes of divorce, one need not be totally free from fault for the parties' marital difficulties. *Bonawitz v. Bonawitz*, 246 Pa.Super. 257, 369 A.2d 1310 (1976). In a divorce case it is the responsibility of this Court to make a de novo evaluation of the record of the proceedings and to decide independently of the master and lower court whether a legal cause of action in divorce exists. *Steinke v. Steinke*, 238 Pa.Super. 74, 357 A.2d 674 (1975). The Master's recommendation, therefore, is advisory only. The exception to this general rule is that in determining issues of credibility the Master's findings must be given the fullest consideration for it was the Master who observed and heard the testimony and demeanor of the various witnesses. *Rensch v. Rensch*, 252 Pa.Super. 294, 381 A.2d 925 (1977).

In the instant case, the testimony of the plaintiff, if believed, clearly demonstrates conduct on the part of his wife which has rendered his condition intolerable and life burdensome. The testimony revealed that the plaintiff (husband) and defendant (wife) were married on December 9, 1947 when the plaintiff was 59 years of age and the defendant was 17 or 18. At the time of the Master's hearing the plaintiff was 81 years of age. Plaintiff testified that the defendant became employed on December 12, 1959 and that about that time his wife only was concerned about herself, refused to clean his room (although she did clean the other rooms of the house), and refused to talk to him. He testified he stopped attempting to communicate to her after she told him, "You don't talk to me". He also testified that in January of 1975 the defendant attacked him by attempting to kick him in the groin and by attempting to scratch his face. His testimony also established that his wife would go out at nights two to three times a week and would not return until after two or three o'clock and that she had come home on several occasions in an intoxicated condition as evidenced by the fact that she was staggering, smelled of alcohol, and on one occasion vomited upon arriving home. The parties have not had sexual relations since 1959 when the defendant moved out of the plaintiff's bedroom and refused to speak to him. She had also directed verbal abuse at the plaintiff by calling him names such as "whoremaster" and "black lung robber".

The dissent makes much of the fact that plaintiff should have been able to clean his room, cook his own meals, and do his own washing and ironing. It also is troubled by the fact that plaintiff had not asked defendant to have sexual relations since 1959 when she moved out of the bedroom. The point is not that plaintiff had to clean his own room or otherwise provide for himself. The significance of these facts is that they manifested a change in attitude towards plaintiff on defendant's part. These facts, coupled with plaintiff's other testimony, was sufficient to enable the Master to find that defendant had manifested an attitude

settled in hate and estrangement towards plaintiff then justifying his action in divorce. Plaintiff testified that he had not sought sexual relations with defendant because she would not even communicate with him. Under such circumstances it is difficult to find plaintiff at fault for not proposing sexual relations.

■ Because the testimony of the plaintiff revealed that the defendant moved out of his bedroom, refused to communicate with him other than to berate him, directed abusive language towards him, attacked him on at least one occasion, and committed other acts which manifest disdain for the plaintiff we find that her actions, occurring over a long period of time, clearly constituted sufficient grounds for the plaintiff to obtain a divorce on the grounds of indignities, as it is clear that these actions demonstrated a cause of conduct on defendant's part amounting to "studied neglect" of plaintiff and manifestly an attitude of settled hate and estrangement towards him.

Since the Master found plaintiff's testimony to be credible, we hold that the court below acted correctly in granting a divorce in this case.

Order affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

In order to obtain a divorce under the Divorce Law, Act of May 2, 1929, P.L. 1237, 23 P.S. § 10, on the ground that his wife committed indignities to his person, appellee had to prove that he was an innocent and injured spouse. *E. g. Mintz v. Mintz*, 258 Pa.Super. 187, 392 A.2d 747 (1978). Appellee's own testimony establishes that he was not innocent and injured. Appellee testified that he has not tried to speak with his wife for years; has not sought sexual relations with his wife since 1959; has not asked his wife to go out for a social activity since 1959; has started as many arguments with his wife as she has with him; has struck his wife on the occasions she has struck him; has used greater force on his wife than she has used on him; has rummaged

through his wife's personal closets without her permission; and has demonstrated virtually no willingness to do household chores even though his wife works and he is unemployed and physically able to do the chores.

Without question, for years the parties' marriage has been one in form only. Appellee suspects his wife's every act, and the wife has become indifferent to appellee. They agree on neither the most inconsequential nor the most important matter. Perhaps the Divorce Law is flawed in not making the decisive factor in a divorce action the cessation of a loving relationship between the parties. It is our function, however, to apply the law. Thus, this court has consistently held that under the Divorce Law, the inability to live together does not constitute a ground for divorce. *Howard v. Howard*, 260 Pa.Super. 257, 393 A.2d 1251 (1978); *Fodor v. Fodor*, 221 Pa.Super. 321, 292 A.2d 485 (1972); *Nichols v. Nichols*, 207 Pa.Super. 220, 217 A.2d 807 (1966); *DeFrancesco v. DeFrancesco*, 179 Pa.Super. 106, 115 A.2d 411 (1955). Further, we have equally consistently held "that where both parties are nearly equally at fault, so that neither can clearly be said to be the injured and innocent spouse, the law will grant a divorce to neither on the ground of indignities to the person, but will leave them where they put themselves." *Simons v. Simons*, 196 Pa.Super. 650, 656, 176 A.2d 105, 108 (1961). *See also Lapiska v. Lapiska*, 202 Pa.Super. 607, 198 A.2d 386 (1964); *Shoemaker v. Shoemaker*, 199 Pa.Super. 61, 184 A.2d 282 (1961); *Rankin v. Rankin*, 181 Pa.Super. 414, 124 A.2d 639 (1956). After examining the record, I find it impossible to determine which party, if either, is more responsible for the breakdown of the marriage. While appellee's wife may have committed indignities against appellee, the record shows that her conduct was, to a great extent, provoked by appellee, and did not amount to excessive retaliation.

I therefore should reverse the order of the lower court granting appellee a divorce. I should do so, however, without prejudice to appellee's filing another complaint for divorce after the effective date of the new Divorce Code, Act of April 2, 1980, P.L. 26, eff. June 30, 1980. The new act

broadens the grounds for divorce, and the filing of a new complaint would appear proper. *See* section 103 of the Divorce Code. In this regard, it should be noted that if appellee is entitled to a divorce under the new act, requiring him to proceed under that act would have substantial consequences for his wife. *See* section 501 of the Divorce Code (provision of alimony after divorce); section 401 of the Divorce Code (distribution of marital property). The result of the majority's decision is to deprive the wife of the right to resort to these provisions for her protection. Given the record of appellee's conduct over the past twenty years, this result, I submit, is to be regretted.

The order of the lower court should be reversed.