Arcure *v.* Arcure, Appellant.

Argued June 17, 1971. Before WRIGHT, P. J., WAT-
KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and
CERCONE, JJ.

*David H. Kubert,* with him *Vito N. Pisciotta,* for
appellant.

*David Weinstein,* with him *Weinstein & Bobrin,* for appellee.

OPINION BY CERCONE, J., September 21, 1971:

This is an appeal by the wife-defendant from the lower court's order granting husband-plaintiff a final decree of divorce on the ground of indignities, contrary to the Master's recommendation that the Complaint in divorce be dismissed.

The lower court said: "We have read the testimony and report of the Master. We have given that report great consideration, especially since the credibility of the witnesses is an important issue. But a review of the testimony will not support the recommendation of the Master. We must therefore reject his recommendation and, on the evidence, grant the prayer of the Complaint." The lower court was duty bound, as is this court, to make its own independent examination. The Master's recommendations and conclusions cannot control the lower court's nor this court's appraisal of the weight and credibility of the testimony: *Sacavitch v. Sacavitch,* 206 Pa. Superior Ct. 229, 231 (1965); *Blatt v. Blatt,* 206 Pa. Superior Ct. 177 (1965). As stated in *Pasternak v. Pasternak,* 204 Pa. Superior Ct. 339 (1964):

"It is true that the report of the master is entitled to great consideration in that he has heard and seen the witnesses and we have so held on numerous occasions, Fiorilli v. Fiorilli, 202 Pa. Superior Ct. 529, 198 A. 2d 369 (1964); and that it should not be lightly disregarded, but however, it is advisory only and the reviewing court is not bound by it and it does not come to the court with any preponderate weight or authority which must be overcome. The reviewing court must consider the evidence de novo, its weight and the credibility of the witnesses. The Master's report is not controlling. either on the lower court or upon the appellate

Court. Rankin v. Rankin, 181 Pa. Superior Ct. 414, 124 A. 2d 639 (1956).

"We must, therefore, examine this record de novo, consider carefully the master's report and at the same time give great weight to the opinion of the court below wherein this evidence was already considered de novo and the credibility of the witnesses carefully examined in view of the master's report."

Our independent review and study of the entire record in this case leads to the conclusion reached by the court below, that plaintiff's testimony did establish a course of conduct on the part of the defendant making his life burdensome and condition intolerable, and constituting indignities to the person of the plaintiff. Without detailing all the evidence, it is sufficient to note that plaintiff's testimony, as summarized in part by the court below, "indicated that the defendant did not cook her husband's meals regularly nor clean the marital home. When pressed, she would become argumentative and abusive. He further testified that the defendant would use vile language towards him, threaten him physically with a knife, and finally forced him to leave the marital home."

Plaintiff's evidence clearly established a course of conduct on the part of defendant which manifested settled hate and estrangement and constituted indignities under the divorce law. As stated in *Margolis v. Margolis*, 201 Pa. Superior Ct. 129, 133 (1963): "Indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement."

A divorce may be granted upon the uncorroborated testimony of the plaintiff unless, of course, that testimony "is not only contradicted but also shaken by the defendant": *Pascoe v. Pascoe*, 201 Pa. Superior Ct. 357,

359 (1963). A review of the testimony of the defendant and her daughter reveals a failure to so contradict and shake the plaintiff's testimony as to render the latter insufficient upon which to base a decree of divorce. Defendant's credibility, as noted by the Master himself, left much to be desired. The record reveals evidence of untruthfulness on defendant's part. Her denials were always categorical and argumentative, consistent with plaintiff's allegations as to her conduct during the marital relationship. Her testimony demonstrated a quality less than credible. The Master himself commented on this as follows:

"There are also marked inconsistencies in the defendant's testimony such as the date of separation of the parties. She first testified that it occurred eleven years ago making it in 1958. Then she stated it took place in 1952, 1957 and 1953. The Master does not consider these inconsistencies to be vital to the case and in fact attributes them to confusion in the minds of the parties.

It is true that defendant's testimony to the effect that she did not bathe or comb her hair, even when her husband was absent,[1] was somewhat difficult to believe though she explained that she washed herself by taking a 'cat wash'.

It is also true that other testimony given by the defendant was not explained. At one point she stated that she cooked for the plaintiff at all times. At another point she stated that the parties went to her mother's to eat."

The record reveals other inconsistencies in defendant's testimony not pointed out by the Master, such as

---

[1] Defendant claimed plaintiff, because of his unreasonable jealousy, did not permit her to bathe or wash her hair and, therefore, for years at a time she would not bathe or wash her hair, even though defendant was not always at home.

the defendant first denying knowledge of plaintiff having two jobs and then later admitting she visited him at the disputed second job. Plaintiff testified he gave defendant money to take care of the house. She countered that he gave her only a dollar a week; yet, she stated she prepared meals regularly, and had friends in for coffee and cake.

It was the Master's conclusion, however, that the apparent incredibility of the defendant's testimony did not call for the application of the legal maxim "falsus in unum, falsus in omnibus" and he then chose to believe the defendant's testimony that the parties' marital difficulties were caused "by the appearance of a girl-friend in the life of the parties". Defendant attempted to corroborate her accusations in this regard by the testimony of her daughter, who could have been only five or six years old at the time of the alleged extra-marital events and eight or nine years old at the time of separation.

It is our conclusion that the Master placed undue weight upon the daughter's testimony and erred in relying on testimony of the defendant when her testimony in most respects was, even according to the Master, untruthful. Though ordinarily the credibility of the witnesses is for the Master to determine, our required independent review of the record causes us to conclude that in this case the Master improperly appraised the weight and credibility of the plaintiff's and defendant's testimony and that he erred in recommending that the decree of divorce be dismissed.

We are of the opinion that the lower court properly held plaintiff entitled to a decree of divorce from the bonds of matrimony.

Decree affirmed.