**Frey v. Frey**

*Melissa Rudas,* for plaintiff.
*Harold J. Funt,* for defendant.

ZULICK, *J.,* July 13, 2006—This matter comes before the court on Richard K. Frey's (Father) exceptions to the report of the support master. Father and Janet S. Frey

(Mother) are the parents of two children, one of whom is a minor. Mother and Father share legal and physical custody of their minor son on an equal basis. The parties live next to each other on property they own, Mother living in a smaller home and Father in the main residence.

A support hearing was held on February 14, 2006, before Richard D. James, Esquire, the support master, on Mother's complaint for child support and alimony pendente lite. On March 20, 2006, the support master filed a report recommending that Father pay the sum of $816 per week in alimony pendente lite, $330 per week in child support, an additional $75 per week for private school tuition.

Father filed exceptions to the report of the support master on March 29, 2006, arguing numerous points of error.

### FINDINGS OF FACT

(1) The parties married on October 13, 1972.

(2) The parties separated around May 2003, and Wife has filed for divorce.

(3) The parties had two children, Alexander, born November 17, 1992, and Natalie, born September 28, 1987.

(4) Father is a chiropractor and currently has two businesses, Pocono Chiropractic Health Centre P.C. and Moorestown Chiropractic.

(5) Mother worked as an office manager in Father's business until October 2005.

(6) Mother currently sells diets for Weight-A-Minute, but these revenues belong to the corporation.

(7) Mother was a licensed practical nurse; however, she has not worked in this field in 18 years.

(8) The parties jointly own a 2000 Mercedes, 1982 Rolls Royce, 1994 Volvo, 1976 Cadillac, 1994 Jaguar, 2003 ATV and a boat.

(9) Father's corporation bought a Hummer motor vehicle within the last few years for his use. NT, p. 56.

(10) Father and Mother jointly own three parcels of real estate in Chestnuthill Township, Hamilton Township and Moorestown, New Jersey.

(11) Father earned $247,000 in wages, tips and other compensation (gross income) in 2003 and 2004. Plaintiff's exhibit 4, 2004 U.S. income tax return; defendant's exhibit 4, compilation report, December 31, 2004.

(12) The parties reported Mother's gross income in 2004 as $3,120. See joint 2004 U.S. tax return, plaintiff's exhibit 4. The master determined that Mother's income capacity was $420 gross per week.

(13) The corporation (Father's two businesses) paid rental fees of $122,196 for commercial property in 2005, however, neither party established whether there were net revenues or losses from rental property.

(14) The current commercial rental fees, when paid, are wholly received by Father.

(15) Mother testified that Father's Pocono business office grossed $1,007,612.80 in 2003 and that his Moorestown business office grossed $178,898.53 in 2003.

(16) Mother testified that Father's Pocono business office grossed $741,357.52 in 2004 and that his Moorestown business office grossed $30,546.49 from January through March 2004. After March 2004, the Moorestown business office started its own computer system and Mother was unable to gather further information about the Moorestown business' gross income.

(17) Mother and Father both testified that insurance reimbursements for chiropractic services have decreased.

(18) The mortgage payment for Mother's and Father's residential property and house is $6,800 per month.

(19) There are two houses on the residential property, one is 15,000 square feet (occupied by Father) and the other is 1,300 square feet (occupied by Mother).

(20) Father began having problems paying the residential mortgage and associated taxes between five and six years ago.

(21) The homeowner insurance premium for 2005 was $11,358. The homeowner insurance premium for 2006 was $12,048.

(22) The couple has an outstanding home equity loan that is approximately $1,400 per month in repayment.

(23) The mortgage payment for the commercial property in Stroudsburg is $8,545 per month.

(24) The commercial business insurance premium for 2005 was $4,882.

(25) The commercial business insurance premium for 2006 was $4,995.

(26) The corporation pays $600 per month, which is the interest only, on its line of credit.

(27) The couple has a 50/50 custody arrangement regarding the minor child.

(28) Father has provided $2,070 in direct payments of support to Mother since October 24, 2005.

## DISCUSSION

When evaluating the merit of the parties' exceptions to the master's recommendation, the court must first examine the master's report. In Pennsylvania, "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties" *Moran v. Moran,* 839 A.2d 1091, 1095 (Pa. Super. 2003) citing *Simeone v. Simeone,* 380 Pa. Super. 37, 50 n.3, 551 A.2d 219, 225 n.3 (1988). However, "[i]t is advisory only, . . . and the reviewing court is not bound by it and it does not come to the court with any preponderate weight or authority which must be overcome." *Rothrock v. Rothrock,* 765 A.2d 400, 404 (Pa. Super. 2000) citing *Arcure v. Arcure,* 219 Pa. Super. 415, 416, 281 A.2d 694, 695 (1971).

"[A]lthough the master's report is entitled to great weight, it is the responsibility of the court to make the final equitable distribution." *Trembach v. Trembach,* 419 Pa. Super. 80, 84, 615 A.2d 33, 35 (1992) citing *Morschhauser v. Morschhauser,* 357 Pa. Super. 339, 516 A.2d 10 (1986). In addition, the court must keep in mind the

legislature's intent "to effectuate economic justice between the parties." *Perlberger v. Perlberger,* 426 Pa. Super. 245, 263, 626 A.2d 1186, 1196 (1993), citing 23 Pa.C.S. §3102(a)(6).

I will address Father's seven exceptions as follows:

*(1) Did the master err by failing to apply a downward deviation to the support guideline amount based on evidence of defendant's (Father's) extraordinary mortgage and real estate tax payments incurred for the parties' jointly titled residential and commercial properties in accordance with Rule 1910.16-5 of the Pennsylvania Rules of Civil Procedure?*

Child support is a primary obligation of the parent and the parent himself may have to forego providing for some of his needs and luxuries in order to provide for his child. See *Colonna v. Colonna,* 581 Pa. 1, 7, 855 A.2d 648, 651 (2004) (explaining that "[w]hile a downward adjustment in lifestyle is a frequent consequence of divorce that affects both adults and children, we would be remiss in failing to ignore the reality of what happens when children are required to live vastly different lives depending upon which parent has custody on any given day"). This family has maintained a high standard of living, although high mortgage payments have permitted that to occur. I find no reason to disturb the master's recommendation with a downward deviation. Father testified that he was highly motivated to sell the parties' real property to bring their budgets into a semblance of reality. Child support and alimony pendente lite must be an obligor's first expense; other expenses must be brought in line to allow an obligor to meet his responsibilities.

Pennsylvania Rule of Civil Procedure 1910.16-5 permits deviations from the support guidelines in cases where there are "unusual needs and unusual fixed obligations." However, application of this rule is discretionary and the court must act in accordance with what is in the best interests of the child. See *Ricco v. Novitski,* 874 A.2d 75 (Pa. Super. 2005) (explaining that purpose of child support is to promote the child's best interests). Further, the support guidelines are presumed to be the proper amount and any deviation requires the trier of fact to consider all relevant factors and no one factor, by itself, is generally sufficient to warrant a deviation. *Ball v. Minnick,* 538 Pa. 441, 648 A.2d 1192 (1994). The practical reality is that the Frey family is undergoing a massive upheaval, both emotionally and financially, as the couple divorces and begins to learn to live within new financial realities. This family is used to a high standard of living, but that may not be possible under current circumstances.

A support order is not a mechanism to punish a spouse, but to achieve equity. Mother, who supported Father's businesses by working for Father while receiving only a minimal salary, needs Father's financial support to raise the couple's minor child and provide for her basic needs, as well as being able to litigate the impending complex divorce.

The Pennsylvania Supreme Court recognized that flexibility in determining support obligations is not unfettered discretion and that "[d]eviation will be permitted only where special needs and/or circumstances are present such as to render an award in the amount of the

guideline figure unjust or inappropriate." *Ball v. Minnick,* 538 Pa. 441, 450, 648 A.2d 1192, 1196 (1994). Therefore, the court will not deviate from the master's determination and will not grant Father a deviation in support based on "unusual needs and unusual fixed obligations."

*(2-3) Did the master err by basing the support amount on the parties' 2003 and 2004 incomes and by ignoring defendant's 2005 income as set forth in Pocono Chiropractic Health Centre P.C.'s 2005 compilation report prepared by Steven Rose CPA?*

The decision to use the parties' last filed tax return as the most accurate evidence of income was one of credibility made by the master. A review of Father's testimony supports the master's determination that Father "was either unable or unwilling to explain his exhibits or to explain the tax return. . . . [Father's] demeanor and vague testimony gave little credibility to him as a witness." Master's report dated March 16, 2006. Since the record supports the master's credibility determination, I will not disturb his finding that the 2004 tax return was the best evidence of the parties' income. This exception is denied.

*(4) Did the master fail to assess the plaintiff an earning capacity reflective of her credentials and previous work history as a licensed practical nurse and office manager?*

The master found that Mother has not worked as a licensed practical nurse in 18 years. She has worked as a bookkeeper and secretary in Father's chiropractic office, although for minimal pay. Mother has attempted to improve her employability by working toward becoming a

personal trainer. Mother currently sells diet products and is attempting to resolve the issue of her nursing license. At the time of the master's hearing, Mother credibly testified that she was unsure of whether she had properly renewed her nursing license and explained that even if she was licensed, she would be hesitant to return to nursing as she has not worked in a clinic or hospital setting providing direct patient care in many years. NT, pp. 6-8.

The Pennsylvania Superior Court explained that "[a]lthough a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings." *Woskob v. Woskob,* 843 A.2d 1247, 1251, (Pa. Super. 2004) citing *DeMasi v. DeMasi,* 408 Pa. Super. 414, 597 A.2d 101 (1991). The, Superior Court further explained that "[e]arning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history." *Id.,* citing *Gephart v. Gephart,* 764 A.2d 613 (Pa. Super. 2000). Mother's true earning capacity is uncertain, but given her long separation from direct patient care in the nursing field, it is highly unlikely that Mother is eminently employable as a licensed practical nurse. Mother does have office management skills and could seek employment in that field.

"APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets which are the financial sinews of domestic warfare." *DeMasi v. DeMasi,* 408 Pa. Super. 414, 420, 597 A.2d 101, 104 (1991),

*appeal denied,* 535 Pa. 619, 629 A.2d 1380 (1993) "APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/ himself, and the only issue is whether the amount is reasonable for that purpose, which turns on the economic resources available to the spouse." *Id.* at 421-22, 597 A.2d at 105; *Litmans v. Litmans,* 449 Pa. Super. 209, 222-23, 673 A.2d 382, 388 (1996). Further, even if a spouse has worked and earned a significant income throughout the marriage, that does not ensure the two separating spouses will be on equal footing. *Powers v. Powers,* 419 Pa. Super. 464, 615 A.2d 459 (1992). Rather, "[a]long with the petitioner's separate estate and income, the trial court must also consider the respondent's ability to pay, the general character situation and surroundings of the parties." *Id.* at 467-68, 615 A.2d at 461. (internal citations omitted) In this situation, Mother has earned significantly less than Father and clearly has a need for alimony pendente lite. Mother gave up her career as a licensed practical nurse to further the family's business; essentially, Mother directly contributed to Father's earning power. As such, Father now has the obligation to provide Mother with appropriate support. Therefore, the master's findings that Mother has monthly net income of $810.33 will not be disturbed.

*(5) Did the master err by failing to credit the testimony of both parties concerning the impact of reduced health insurance reimbursements on the professional corporation's revenues?*

Mother and Father each testified that there have been ongoing decreases in insurance reimbursements for Fa-

ther's chiropractic practice. However, this does not change the fact that the master made a credibility determination that the financial information provided by Father for 2005 was less than reliable. Father is still driving a Rolls Royce and, within recent years, bought a Hummer as a corporate vehicle. These are not indicia of a principal dealing with declining business revenues. If that is truly the case, Father needed to make a better record of business revenues and expenses than what was presented to the master. Therefore, this exception is denied.

*(6) Did the master improperly conclude that the negative financial impact of the corporation's decreased revenues did not occur until 2005, the year in which the petition for support was filed and that defendant manipulated the corporation's financial statements by accelerating expenses and deferring income?*

As noted above, the master did not find Father's testimony about his financial condition in 2005 to be credible, and relied upon the 2004 joint tax return to determine the parties' incomes. The master found that the negative financial impact of declining insurance reimbursements did not actually occur until 2005, based upon the accountant's compilation reports submitted by Father. See defendant's exhibits 3 and 4. The master did not find the compilation reports to be a true rendition of Father's financial condition. I will not disturb the master's credibility determination on that point.[1] Therefore, the mas-

---

1. Given Father's difficulty in explaining his financial condition, an actual filed tax return or the testimony of the preparer of the compila-

ter's determination on this matter will be upheld and this exception is denied.

*(7) Did the master fail to consider credit for all payments made by the defendant for the benefit of the plaintiff, including, but not limited to, mortgage, heat, cable, cell phone, electric, propane and telephone on plaintiff's residence, pursuant to the October 20, 2005 order approving the stipulation of the parties at no. 777 D.R. 2003; 5768 Civil 2003?*

On the day of the argument on this matter, Mother and Father, with their counsel, participated in proceedings to resolve other related matters regarding this support matter. At that time, pursuant to a court order that I issued, Father received a credit on his support order of $3,019.29. Therefore, this exception is moot.

## CONCLUSIONS OF LAW

(1) The master's report and recommendation is supported by credible evidence and will be accepted.

## ORDER

And now, July 13, 2006, following a hearing on Richard K. Frey's exceptions to the report of the support master, it is ordered that Father's exceptions are denied. The provisions of the master's report are adopted and remain in full force and effect.

---

tion reports would have assisted the master and the court in this determination.