## Latas v. Latas

*Walter B. Cope Jr.,* for plaintiff.
*Laurel Diznoff,* for defendant.

HANNA, *J.,* September 14, 2007—This matter comes before the court on defendant's exceptions to the report and recommendation of the divorce master. For the reasons set forth in this opinion, the court denies the defen-

dant's exceptions 3, 4, 5, 8, 9, 10, 14, 17 and amended exception 1. The court grants defendant's exception 14.[1]

## FACTUAL AND PROCEDURAL HISTORY[2]

Lewis L. Latas (Husband) and Barbara J. Latas (Wife) were married on March 3, 1990. They separated on March 31, 2000. Husband filed for divorce on November 8, 2004. Husband filed a motion for appointment of master on December 6, 2005. A master's hearing was held on July 25, 2006 before Divorce Master Sharla Coughlin, Esquire. Based on the testimony presented, the master recommended that Wife be awarded limited, non-modifiable alimony in the form of Husband paying for the COBRA coverage of Wife's health insurance premiums for 36 months (with no obligation to pay any uncovered or unreimbursed expenses).

On November 27, 2006, Wife filed 21 exceptions to the master's recommendations. Additionally, Wife filed one amended exception on November 28, 2006. The exceptions are:

(1) The master's recommendations are against the weight of the evidence.

(2) The master erred in failing to recommend that Wife receive modifiable alimony for a period of at least until Wife receives Social Security benefits and thereafter.

---

1. Exceptions 1, 2, 6, 7, 11, 12, 13, 15, 16, 18, 19, 20 and 21 were withdrawn, as explained below.

2. These facts were derived from the master's report, the pleadings and the hearing transcript.

(3) The master erred in failing to recommend that Wife receive alimony other than non-modifiable alimony for a period of 36 months and limited to the cost of health insurance for Wife through COBRA.

(4) The master erred in not granting Wife modifiable alimony given Wife's age, physical condition, income, including without limitation, sources of income, lack of medical insurance and ability to provide for herself, and Wife's work history, and further given Husband's age, income, possible future earnings, education, work history and expected work history.

(5) The master erred in considering amounts allegedly paid to Wife since separation, including amounts Husband claims were paid, over and above spousal support, when:

(a) No documentation was presented to substantiate such payment.

(b) Husband never sought to divorce Wife until at least four years following the parties' separation.

(c) Husband chose to voluntarily provide certain help to Wife, never telling Wife that he planned to seek credit for doing so.

(d) Husband's own testimony disputed several of those amounts.

(e) Parties had entered into an agreement regarding taxes.

(6) The master erred in finding that Husband allegedly spent monies on Wife "in lieu of getting his own place," etc. when Husband did not testify that he used his monies on Wife in lieu of doing so.

(7) The master erred in finding that Husband made "numerous" contributions to Wife "above and beyond" the court ordered support.

(8) The master erred in recommending that Wife not receive alimony other than three years of non-modifiable alimony in the amount of COBRA, given Wife's work history.

(9) The master erred in finding that Wife chose not to work and instead "relied on Husband's spousal support and gratuitous contributions above that support to live."

(10) The master erred in finding that Wife has no physical limitations in spite of the master's own statement that Wife could testify to her condition as it affected her ability to work without the necessity for expert testimony and in spite of the fact that Husband himself acknowledged Wife's medical conditions, which existed during the marriage.

(11) The master erred in finding that Wife's daughter from her first marriage resided with Wife at the time of the hearing.

(12) The master erred in finding that Husband and Wife's attempts at reconciliation and counseling occurred only one week prior to the master's hearing.

(13) The master erred in finding that Husband spent approximately $4,100 for Wife's automobile expenses.

(14) The master erred in finding that Husband contributed IRA monies from a 30-year work history prior to the parties' 10-year marriage and further erred in finding that it was because of Wife that the parties utilized Husband's IRA monies. The master further erred in finding

that Wife mismanaged the parties' funds and in not crediting Husband with a contribution to any mismanagement of funds when Husband could have handled the funds.

(15) The master erred in finding that Wife refused to work during the course of the marriage, and that she mismanaged the parties' funds.

(16) The master erred in finding that Husband voluntarily shared tax refunds with Wife for almost seven years post separation.

(17) The master erred in applying *Teodorski v. Teodorski,* 857 A.2d 194 (Pa. Super 2004) to the facts in the instant case and in failing to distinguish the instant case from *Teodorski.*

(18) The master erred in finding that Husband failed to get on with his own life.

(19) The master erred in finding that a 10-year marriage was a marriage of short duration.

(20) The master erred in finding that Wife was not pursuing counsel fees.

(21) The master erred in failing to recommend that Husband pay Wife's counsel fees.

Amended exception 1: The Master erred in finding Wife to have a full-time earning capacity.

Wife withdrew exceptions 1, 2 , 6, 7, 11 , 12, 13, 15, 16, 18, 19, 20, and 21 at the argument before this court on July 25, 2007. This withdrawal was confirmed in a letter to the court dated July 26, 2007. For the purpose of consistency and clarity, the court will continue to refer to the remaining exceptions by their original numbers in this opinion.

## DISCUSSION AND ANALYSIS

In her brief in support of exceptions, Wife grouped her remaining nine exceptions into four arguments. The court will address each of these arguments in turn.

*Amount of Alimony: Exceptions 3, 4, 8, 17*

Wife argues that the master improperly relied on the *Teodorski* case in her alimony determination. She further argues that, based on the statutory alimony factors, the master should have awarded more than 36 months of non-modifiable alimony.

The master found *Teodorski* to be factually similar to the present case. See 857 A.2d 194 (Pa. Super 2004). In *Teodorski,* the marriage lasted for six years, and Husband paid spousal support for four years and nine months. *Id.* at 201. The Superior Court distinguished *Teodorski* from other cases involving longer marriages and alimony awards. It found no abuse of discretion where the trial court, in its decision to deny alimony, considered the length of the marriage and the number of years that husband had previously paid spousal support. *Id.* In making this finding, the *Teodorski* court relied on *DeMarco v. DeMarco,* a Superior Court case which found that "requiring [a h]usband to pay 20 years' worth of alimony following a 12-year marriage appears inequitable considering [the h]usband's payment of alimony and child support over a 17-year period." See *Teodorski* at 201 (citing *DeMarco v. DeMarco,* 787 A.2d 1072, 1081 (Pa. Super 2000)). Further, the parties in *Teodorski* had no major assets except for Husband's pension. *Id.* at 200.

In the present case, as in *Teodorski,* the parties were married for a relatively short time before separating (10 years), with Husband paying spousal support for almost as long as the marriage was intact (seven years). Additionally, the parties here have no property subject to equitable distribution, putting them in a similar situation to the parties in *Teodorski.*

In her brief, Wife attempts to distinguish *Teodorski* from the present case by pointing out that the *Teodorski* court considered the fact that Husband had custody of the parties' two children and was responsible for caring for them, while there was no custody issue in the present case. See *Teodorski* at 202. The *Teodorski* court did consider many relevant factors, including custody; however, the factors that the court addressed most prominently were the length of marriage and number of years that the husband paid spousal support. See *id.*

Wife further argues that the master should have followed *Ramos v. Ramos* instead of *Teodorski. Ramos v. Ramos,* 80 D.&C.4th 242 (2006). In *Ramos,* the court focused on the wife's disability and the gap in the parties' income in awarding alimony. *Id.* at 257-59. Because it was "not a long marriage" (six years), the court awarded alimony for only six years. *Id.* at 258. However, Wife neglected to mention that, in *Ramos,* there was less than one year between the filing of divorce and the master's report. See *id.* at 243. Therefore, assuming the husband in *Ramos* paid spousal support at all, he paid it for less than one year when the case came before the master. Hence, the facts of *Ramos* are not comparable to the present case, where seven years passed between separation and the master's hearing. Further, *Ramos* is distin-

guishable from the present case due to the disability factor. The master in *Ramos* found that the wife in that case was disabled, and used that finding in his decision to award alimony. See *Ramos* at 257. In the present case, the master found (and this court upholds, as explained below) that Wife is not disabled and does have an earning capacity. Therefore, *Ramos* is inapplicable to the present case.

The court finds that the master properly relied on *Teodorski* because it was factually similar to the present case. The court further finds that the master properly considered the statutory alimony factors in light of *Teodorski*.

Based on the master's report, the court concludes that the master adequately addressed the alimony factors to the extent that information about them was placed on the record. The following is a brief summary of the factors as applied to the present case by the master.

Both parties have an earning capacity, though Wife's earning capacity is minimal. (Master's report at 8.) The parties are the same age, and, though Wife testified to certain health issues, neither party seems to have any serious physical, mental or emotional problems. (See master's report at 3, 6-8.) Husband and Wife are both employed. (Master's report at 5, 8.) Husband is employed full-time and has health insurance. (Master's report at 5.) Wife is employed part-time. (Master's report at 8.) Neither party has an immediate expectation of inheritance. (Master's report at 13.) This was not a relatively long marriage. (Master's report at 13.) Husband contributed to Wife's education. (Master's report at 6.) The parties do not have any minor children. (Master's report

at 3.) Based on the descriptions of two of the residences where the parties resided, the standard of living during the marriage seems to have been modest, though the parties were not thorough in depicting their lifestyle. (Master's report at 12-13.) Husband has a college degree. Wife has a high school diploma, and has completed some post high school non-credit writing classes. (Master's report at 3, 6.) The parties have no assets subject to equitable distribution. (Master's report at 4.) Husband brought $60,000 worth of Merrill Lynch IRAs to the marriage, while Wife brought an old car to the marriage. (Master's report at 3.) Both parties have financial needs, as Husband's IRAs were spent during the marriage. (Master's report at 3.) Each party had complaints about the marriage, but nothing that rose to marital misconduct. (10-11.) Wife is capable of self-support through appropriate employment. (Master's report at 19.)

It is clear, based on the above summary, that the master properly acknowledged and considered the statutory alimony factors, as well as any other relevant information, in her decision regarding alimony. Therefore, the court upholds the master's findings on this issue, and denies exceptions 3, 4, 8, 17.

### *Wife's Earning Capacity: Exceptions 9, 10, and Amended 1*

Wife argues that she is unable to work, and that the master erred in finding that she is able to work and has an earning capacity. With regard to the part of exception no. 9 relating to master's "statement that Wife could testify to her condition as it affected her ability to work without the necessity for expert testimony," the court

reviewed the hearing transcript and found no such statement. The master said that Wife was allowed to testify as to her perception of her problems, but did not claim that expert testimony would be unnecessary. (R. at 77.) Further, in light of the fact that Wife did not have an expert present, the master was permissive by allowing Wife to testify to what her doctors told her. (See hearing transcript, 106.)

Though the master allowed Wife to testify about her medical condition, no expert testimony was introduced. The master noted that she afforded counsel the opportunity to submit a post hearing physician's disposition regarding Wife's ability or inability to work full-time. Counsel verbally notified the master that, in lieu of a doctor's disposition, they would be submitting a stipulated earning capacity for Wife to be used in the master's deliberations. The master did not receive this stipulation, and therefore the master was restricted to Wife's testimony in determining Wife's earning capacity. Wife testified that no doctor had ever told her she could only work part-time. She also testified to currently working 27 hours per week as a telemarketer. The master had "serious doubts" about Wife's credibility and/or willingness to support herself. (Master's report at 9.) These doubts stem from a few different areas in Wife's testimony, including: Wife's contradictory statements that 27 hours was all that she could work vs. 27 hours was all that she could get; Wife has applied to jobs where she felt she could commit her time, but turned down a job at Bon-Ton because her daughter needed a job at the same time. (See R. at 76, 101-102.) Based on "Wife's demeanor and testimony at the hearing, and the record as presented," the master found that Wife is able to work.

After reviewing the record, the court finds that there is not sufficient evidence to show that Wife is unable to work, and therefore denies exceptions 9, 10, and amended 1.

### *Voluntary Contributions: Exception 5*

At the master's hearing, Husband testified that he made several post-separation contributions to Wife in addition to spousal support. These contributions include: car insurance; car repairs; car maintenance; health insurance; other medical, dental and chiropractic expenses; paying off a loan that the parties had co-signed; security deposit for rent; and household expenses. (R. at 22-29.) Wife argues that, in determining alimony, the master erred in giving Husband credit for these contributions. Wife cites to *Jayne v. Jayne,* 443 Pa. Super. 664, 681, 663 A.2d 169, 177 (1995), which states: "Husband was only required to pay spousal support during the period of separation. The voluntary payment of Wife's expenses from his own resources will not be credited at equitable distribution." She also cites to *Middleton v. Middleton,* 812 A.2d 1241, 1247 (Pa. Super. 2002), which similarly states that voluntary payments will not be credited in equitable distribution.

Neither of these cases applies to the present case, as they both deal with voluntary payments in regards to equitable distribution, not alimony. The master herself recognized that if the issue in this case was equitable distribution, she could not consider certain contributions. (R. at 48-49.) The court recognizes that "contributions other than spousal support" is not listed in the alimony factors set out in 23 Pa.C.S. §3701. However, those factors are not an exclusive list. Rather, the court is supposed

to consider "all relevant factors." See 23 Pa.C.S. §3701(b). In the present case, the court finds that Husband's voluntary contributions to Wife are a relevant factor to be taken into account in determining alimony, and therefore denies exception 5.

### *IRA Funds and Mismanagement of Finances: Exception 14*

Wife argues that the master erred in finding that the parties utilized Husband's IRA funds during the marriage because Wife mismanaged the parties' finances, and because the master did not consider Husband's part in the matter. The court first notes that it is unclear whether the master made this finding at all. The master briefly notes that Husband testified to Wife's mismanagement of finances. (Master's report at 12.) The master then states in her legal conclusion/recommendation, "[t]hose retirement monies that Husband brought to this 10-year marriage, some $60,000, were expended during the marriage for bills when *allegedly,* Wife was mismanaging the couples [sic] finances and refusing to go to work, which this master found insofar as Wife's not working to be credible." (emphasis added) It seems to the court that the master found Wife's refusal to go to work credible, but did not make a finding regarding mismanagement of funds. However, because it is not clear as to whether the master made a finding on Wife's mismanagement of funds, the court will address the issue.

Assuming the master did mean to include mismanagement of funds in her conclusion, the court finds that the testimony is insufficient to support a finding that the parties used the IRA funds due to Wife's mismanagement

of funds. The court therefore disagrees with the master's finding of mismanagement of funds.

While a master's report is entitled to great consideration and should not be lightly disregarded, it is advisory only. *Arcure v. Arcure,* 219 Pa. Super. 415, 281 A.2d 694 (1971). The reviewing court must consider the evidence de novo. *Arcure* at 416, 281 A.2d at 695 (citing *Rankin v. Rankin,* 181 Pa. Super. 414, 124 A.2d 639 (1956)).

Here, Husband testified that he felt that Wife mismanaged the funds, without giving specific details as to how she mismanaged them. (R. at 120-21.) Additionally, when asked why he could not take control of his finances during the marriage, Husband first stated, "Because I'm married to my wife and she wanted to share that and wanted her name on my checking." (R. at 121.) When asked again why he could not have taken the checkbook and paid the bills himself, Husband responded, "It's tough." (R. at 121.) The court finds these answers to be inadequate to show mismanagement of funds. Without more information or explanation in the record other than Husband's belief that Wife was not "doing a good job," the court cannot find that Wife mismanaged the parties' funds. Further, Husband testified that he had to cash in the IRAs to pay bills, some of which were his alone, including child support to a child from a previous marriage and expenses for a protection from abuse hearing. (See R. at 14-15.) He also testified that, prior to filing for the master's hearing, he did not take any initiative to correct Wife's management of the finances. This indicates that Husband contributed to the need to cash in his IRAs, and this court will not hold Wife responsible for how the finances were handled. Additionally, the court finds that

mismanagement of funds and cashing in the IRAs did not affect the master's recommendations.

Wherefore, the court makes the following order.

## ORDER

And now, September 14, 2007, this matter having come before the court on defendant's exceptions to the report and recommendation of the divorce master and the court having heard argument thereon, it is hereby ordered and directed as follows: The court denies defendant's exceptions 3, 4, 5, 8, 9, 10, 14, 17 and amended exception 1. The court grants defendant's exception 14. Exceptions 1, 2, 6, 7, 11, 12, 13, 15, 16, 18, 19, 20 and 21 were withdrawn by defendant's counsel at argument. The court adopts the recommendations of the master (by separate order).