**Fuhr v. Fuhr**

*William M. Blaum,* for plaintiff.
*Frederick Paul Fuhr,* pro se.

ZULICK, *J.,* January 24, 2008—These are exceptions filed by both parties from the master's report and recommendation in divorce. Caroline Dimson Fuhr (Wife) and Frederick Paul Fuhr (Husband) were married on March 31, 1991. They separated between December 2004 and January 2005. The parties have three children together: Katherine Nicole, born August 8, 1988; Marian Marie,

born June 19, 1990; and Gabriela Rita, born September 7, 1993. Wife has primary physical custody of the two minor children pursuant to a court order dated December 14, 2005.

Wife filed a complaint in divorce on June 2, 2005. The parties entered into a stipulation of settlement before Divorce Master Daniel M. Corveleyn, Esquire, on August 8, 2006. The stipulation was subject to Husband's ability to refinance the first and second mortgages on the marital home at 97 Fairview Avenue, Mount Pocono, Monroe County, Pennsylvania. Husband was unable to obtain refinancing, so a full evidentiary hearing was held before Attorney Corveleyn on January 16, 2007. The master filed his report, which included attached affidavits of consent, on August 9, 2007. Master's report exhibits A and B. Husband and Wife both filed exceptions and appeared at oral argument on December 3, 2007.

In Pennsylvania, "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Moran v. Moran,* 839 A.2d 1091, 1095 (Pa. Super. 2003) citing *Simeone v. Simeone,* 380 Pa. Super. 37, 50, 551 A.2d 219, 225 (1988). However, "the reviewing court is not bound by it and it does not come to the court with any preponderate weight or authority which must be overcome." *Rothrick v. Rothrick,* 765 A.2d 400, 404 (Pa. Super. 2000) citing *Arcure v. Arcure,* 219 Pa. Super. 415, 416, 281 A.2d 694, 695 (1971).

"[A]lthough the master's report is entitled to great weight, it is the responsibility of the court to make the

final [equitable] distribution." *Trembach v. Trembach,* 419 Pa. Super. 80, 84, 615 A.2d 33, 35 (1992) citing *Morschhauser v. Morschhauser,* 357 Pa. Super. 339, 516 A.2d 10 (1986). In addition, the court must keep in mind the legislature's intent "to effectuate economic justice between the parties." *Perlberger v. Perlberger,* 426 Pa. Super. 245, 265, 626 A.2d 1186, 1196 (1993), citing 23 Pa.C.S. §3102(a)(6).

## WIFE'S EXCEPTIONS TO REPORT
## OF DIVORCE MASTER

Wife's various objections were condensed into eight arguments discussed in her brief. I will address each one in turn.

(1) *Wife contends that the master erred in the apportionment of marital property and marital debt, including crediting Wife with the Bank of America account, the Commerce Bank account, a $3,000 credit for personal property, and a $600 credit for a 1990 Volvo which was sold by Husband.*

I begin by noting that Wife was not credited $600 for Husband's sale of the 1990 Volvo. The Volvo was credited to Husband as distribution in kind. See schedule of distribution attached to master's report. Wife also argues that the 1990 Volvo should have been credited to Husband at its Blue Book value of $3,075. Plaintiff's brief in support of exceptions to divorce master's report and recommendation 7. The master, however, found Husband's testimony credible that the vehicle had "a leaking sunroof, and considerable mold in the interior." Master's report 15-16. These defects would significantly decrease

the vehicle's value, and I find that the master did not err in valuing the vehicle at the price for which it was sold.

The Commerce Bank account was solely in Wife's name. Defendant's exhibit 3. As of December 22, 2004, the statement date closest to the date of separation, the account had a balance of $1,588.01. *Id.* Wife claims that the master erred in assigning a value of $1,588 to the account because the funds "were a loan from her cousin, George Morris, to purchase a home in Mount Pocono." Plaintiff's brief 7. Wife provided no evidence, however, to support her testimony regarding the loan and admitted that Butter Krust Bakery also deposited her wages into this account. *Id.* 8; Defendant's exhibits 2-3. Wages are not excluded from marital property. 23 Pa.C.S. §3501. Without any evidence to verify the existence, amount, or terms of the loan, the master did not err in apportioning the Commerce Bank account to Wife in the amount it contained at the time of the parties' separation.

Wife avers that the master erred in assigning a value of $1,361 in a Bank of America account to her. The master acknowledged Wife's testimony that Husband removed all of the funds from the account and did not give any to her. Master's report 17; Notes of Testimony from master's hearing (N.T.) 33-34. Wife testified that there was approximately $1,300 in the account when the parties separated. N.T. 34. Husband did not contradict this fact. Husband admitted that he transferred that money to a separate account in his own name. *Id.* at 180-81; plaintiff's exhibit 19. Consequently, I find that the master erred in crediting Wife with distribution of the

funds in this account when Husband acknowledged dissipation of the funds. The account should have been credited to Husband as a distribution in the amount of $1,361.

Wife testified that the furnishings in the house included bedroom furniture, a sofa, a dining room table and chairs, and a washer and dryer. N.T. 25-27. She could not place a definite value on the property, but she believed it would exceed $10,000. *Id.* at 102. Although Husband testified that he thought it would cost $1,200 to move the property from the house, he provided no information about the actual value of the personal property. *Id.* at 128. Based on the testimony of Husband and Wife, the master assigned a value of $3,000 to the property. Master's report 17.

Wife did not list the personal property on her inventory and appraisal. *Id.* at 16. Given that the master stated that he "has no information regarding the actual value of the personal property in the home," Husband apparently did not list the home furnishings on his inventory and appraisal, either. *Id.* A party may be estopped, except for good cause shown, from testifying to the value of property not included on the inventory and appraisal. See Pa.R.C.P. 1920.33(d)(1). When neither party includes property on their inventories, this oversight "can only be attributed to the lack of knowledge or an unawareness of the true nature of the property, which is a sufficient basis for finding good cause shown." *Anderson v. Anderson,* 822 A.2d 824, 829 (Pa. Super. 2003). In *Anderson,* however, the property at issue was an antique collection that had appreciated $30,000 in the course of the marriage. *Id.* at 827. The personal property involved here is

the kind that would be found in any home. The master erred in assigning a value to this property when it was not listed on either party's inventory and appraisal and the master had insufficient information to value it. Each party is entitled to the personal property in their possession, but no value will be assigned to it due to lack of sufficient evidence. See *id.* at 826.

Finally, Wife maintains in her first exception that she should be awarded a larger portion of the marital property. Plaintiff's brief 5. The master awarded 55 percent of the marital property to Wife and 45 percent of the marital property to Husband. Schedule of distribution attached to master's report. The factors to be considered in determining an equitable distribution are:

"(1) The length of the marriage.

"(2) Any prior marriage of either party.

"(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

"(4) The contribution by one party to the education, training or increased earning power of the other party.

"(5) The opportunity of each party for future acquisitions of capital assets and income.

"(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

"(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

"(8) The value of the property set apart to each party.

"(9) The standard of living of the parties established during the marriage.

"(10) The economic circumstances of each party at the time the division of property is to become effective.

"(10.1) The federal, state and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

"(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

"(11) Whether the party will be serving as the custodian of any dependent minor children." 23 Pa.C.S. §3502.

Wife has custody of two minor children and worked only part-time for the first 10 years of her marriage to Husband. N.T. 18. Husband earned a yearly income in excess of $100,000 for a few years of the marriage. *Id.* at 160-61. Currently, however, Husband is now unemployed. Husband earned $38,983 in 2004. Plaintiff's exhibit 11. The jobs for which he is considered a competitive candidate now generally pay between $30,000 and $35,000 per year. N.T. 150. Wife is working full-time and plans to continue doing so. *Id.* at 22-23. The children are all teenagers; their care should not significantly affect Wife's ability to work full-time. Between 2004 and 2006, Wife earned between $14,000 and $19,000 per year. Plaintiff's brief 6. Husband is 20 years older than Wife

and not likely to have the same earning capacity he had for some period during the marriage. In light of these circumstances, I find that the master did not err in dividing the marital property.

(2) *Wife contends that the divorce master erred by failing to recommend that Husband be credited an amount for the personal property he retained.*[1]

As I discussed during Wife's exception to the master's $3,000 valuation of personal property in the home, each party is entitled to retain the personal property in their possession. I will not assign a dollar amount to the property, however, without evidence. No testimony was introduced regarding the value of Husband's personal property.

I will affirm the master's decision not to credit Husband for personal property he retained beyond the two motor vehicles he was awarded in equitable distribution.

(3) *Wife contends that the master erred in failing to recommend that specific debts, liens, and/or credit cards are the responsibility of Husband or Wife.*[2]

The master divided the marital debt 50/50 between Husband and Wife, but he did not assign specific credit accounts to either party. Schedule of Distribution attached to Master's report. Both parties were using credit during their marriage and there is no way to de-

---

1. I will address Wife's second argument, that Husband should pay a larger percentage of the costs in the case, when I consider whether the master should have awarded Wife attorney's fees and costs.

2. In order to avoid repetition, I will address the 2006 real estate taxes when I discuss Wife's contention that this is not marital debt.

termine who incurred specific charges. The Target Visa was the only individual account, but Wife used the card for the children and to make house and car payments. N.T. 57. The master believed Wife's testimony because he included the Target card as marital debt. I find, therefore, that the master did not err in making each party responsible for 50 percent of the debt incurred through the use of these cards during their marriage.[3]

Husband and Wife should be individually accountable for their credit obligations from this point forward. The parties' joint debt should be eliminated through equitable distribution, if possible. The master determined the amount of marital debt, and then apportioned the debt on an equal basis. However, he did not assign specific debt to either party.

The master also directed Wife to pay Husband the sum of $10,242 within 60 days of the date of the divorce decree, to balance Wife's share of distribution with Husband's share. Wife has taken exception to this, suggesting that since the parties have extensive marital debt, the better distribution would be to assign her a portion of Husband's share of the debt. I will grant this exception, and assign Wife marital debt instead of requiring her to pay cash to buy out Husband's interest in marital property. This eliminates the possibility that Wife will pay Husband cash which Husband does not use to retire his share of joint marital debt. Under that scenario, Wife

---

3. Husband testified that he paid $680 on the Shell credit card after separation. N.T. 127. Wife testified, however, that Husband subsequently placed more debt on the card. *Id.* at 38. No Shell card statements were introduced as exhibits. In the absence of any other evidence, the master's assignment of marital debt on this card will stand.

could pay Husband but continue to be responsible to creditors for Husband's share of their marital debt. By assigning Wife this debt, and requiring her to eliminate Husband's liability for it, Husband leaves the marriage with greatly reduced debt, and can force the sale of the house in the event that Wife does not satisfy his marital debt obligation assigned to her.

Wife shall be solely responsible to pay the following marital debt:

| | |
|---|---|
| Capital One Visa— | 1,836. |
| Sears Gold Mastercard— | 4,171. |
| Direct Merchant's— | 11,665. |
| Target Visa— | 1,917. |
| 2006 Real Estate taxes— | 2,800. |
| Total | 22,389. |

Husband shall be solely responsible to pay the following marital debt:

| | |
|---|---|
| Shell Citicorp— | 800. |

The parties shall be given six months to refinance or satisfy these debt obligations to remove the other party's liability on the accounts. Husband will provide Wife with a special warranty deed to the marital property at the time Wife satisfies the existing mortgages and marital debt distributed to her. In the event that Wife has not refinanced the debt and the joint mortgages secured by the parties' marital residence within that six month period, Husband may petition the court to force the sale of the marital residence. The proceeds of that sale shall be used first to pay the parties' ordinary costs of sale, secured debt, and marital unsecured debt. Any remaining net proceeds of sale shall be divided between the parties in the 55/45 shares determined by the master.

(4) *Wife contends that the master erred in recommending that Wife make a $10,242 payment to Husband instead of offsetting the payment against marital property.*

Wife argues that the master should have assigned her a larger portion of the marital debt instead of recommending that she pay Husband. Plaintiff's brief 9. This exception has been granted as described previously.

(5) *Wife contends that the master should have reduced the equity in the marital residence to reflect appropriate costs for the sale of the property.*

Wife has no current plans to sell the marital residence. Plaintiff's brief 11. In not including the cost of sale in his valuation, the master stated that "plaintiff strenuously assured the master that she could remain in the home and pay for all the expenses" and that she would "not be placing the home on the market for sale." Master's report 14.

Wife argues that the "law does not require that the sale of the home be immediate and/or foreseeable" for a court to adjust the equity for the cost of sale. Plaintiff's brief 11. This does not mean, however, that sale expenses *must* be used to calculate the equity in a marital residence. It is simply one factor to be weighed "in such manner as the court deems just." 23 Pa.C.S. §3502(a). Given Wife's clear intention not to sell the home, the master did not err in failing to deduct the cost of sale from the equity in the marital property.

Should the house be sold, as discussed above, because Wife is unable to refinance the parties' marital debt to remove Husband's liability, the costs of sale will be paid first before any distribution to the parties.

(6) *Wife contends that the divorce master erred in failing to credit Wife with fair rental value of the marital property.*

The master did not award Wife the fair rental value of the property while Husband was in exclusive possession because, "unfortunately, there was no testimony at the hearing provided by a qualified real estate broker that established the fair rental value of this house" and "the master can only decide based upon valid and reasonable testimony and evidence presented at the hearing." Master's report 15. Wife proposed a fair rental value simply by multiplying the fair market value of the property by one percent, but such a formula was not verified or supported by anyone in the field of real estate. *Id.* at 14-15; Plaintiff's brief 12. Whether to award fair rental value "is within the sound discretion of the trial court." *Gaydos v. Gaydos,* 693 A.2d 1368, 1377 (Pa. Super. 1997). Without any evidence, I cannot assign a fair rental value to the property while Wife was not living there.

I will affirm the master's decision not to award Wife half of the fair rental value of the property.

(7) *Wife contends that the master erred in failing to award her attorney's fees and costs.*[4]

In a divorce action, attorney's fees are not awarded to either party automatically. *Johnson v. Johnson,* 365 Pa. Super. 409, 415, 529 A.2d 1123, 1126 (1987). A party must demonstrate that he or she has actual need of attorney's fees and that this award is essential to "put the

---

4. This includes Wife's argument, alluded to in her second exception, *supra,* that Husband should pay the cost of appraisal, the master's fee, and the transcript fee. Plaintiff's brief 8.

parties 'on a par' in defending their rights or in allowing a dependent spouse to maintain or defend an action for divorce." *Fitzpatrick v. Fitzpatrick,* 377 Pa. Super. 268, 281, 547 A.2d 362, 369 (1988), *citing Johnson.* Courts must consider "the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution." *Perlberger v. Perlberger,* 426 Pa. Super. 245, 284, 626 A.2d 1186, 1207 (1993).

Husband is currently unemployed, which hinders his ability to pay Wife's attorney's fees and court costs. Wife was awarded 55 percent of the marital assets, including the marital residence, which is the bulk of the marital estate. I find that an award of attorney's fees and costs is unwarranted in this case.

I will affirm the master's decision not to award attorney's fees and costs to Wife.

(8) *Wife contends the master erred in recommending that the 2006 property tax be listed as a marital debt.*

Wife asserts that the property tax is not marital debt because it was incurred after the parties separated and Wife had left the marital residence. Plaintiff's brief 14. The definition of marital property excludes "[p]roperty acquired after final separation until the date of divorce, except for property acquired in exchange for marital assets." 23 Pa.C.S. §3501(4). The property tax is tied to ownership of the marital residence, which clearly is a marital asset. In 2006, both parties were the owners of the property. I find, therefore, that both parties are responsible for paying the 2006 property tax on the marital residence.

I will affirm the master's recommendation to list the 2006 property tax as a marital debt, with Husband and Wife each responsible for 50 percent of the tax.

## HUSBAND'S EXCEPTIONS TO REPORT OF DIVORCE MASTER

Husband's exceptions were not filed in a timely manner and are, therefore, deemed waived. See Pa.R.C.P. 1920.55-2(b). The master's report was filed on August 9, 2007 and Wife filed exceptions on August 24, 2007. Husband had 20 days from the service of Wife's exceptions to file his own exceptions, but he did not file them until November 28, 2007. See Pa.R.C.P. 1920.55-2(c).

To the extent that Husband requests that each party be granted 50 percent of the marital assets, I refer to the discussion above regarding Wife's challenge to the master's equitable distribution. Husband's age, income, and earning capacity all were considered in reaching an equitable distribution.

## DECREE

And now, January 24, 2008, it is ordered and decreed that:

(1) Carolyn Dimson Fuhr, plaintiff, and Frederick Paul Fuhr, defendant, are divorced from the bonds of matrimony.

(2) The recommendations of the master for equitable distribution of the parties' marital property are approved and made a part of this decree, with the following amendments: Wife's exceptions relating to:

(a) the master's inclusion of a $3,000 credit for personal property;

(b) the master's credit of the Bank of America account to Wife;

(c) the master's direction that Wife pay cash to purchase Husband's interest in the marital residence are sustained.

(3) A new schedule of distribution is attached to this decree, identifying marital property, the parties' respective shares of that property, marital debt, the parties' respective shares of that marital debt, and the obligation to pay the marital debt. The parties shall carry out this distribution of property and debt as set forth in the attached schedule.

(4) The court retains jurisdiction of any claims raised by the parties to this action for which a final order has not yet been entered.

(5) Any existing spousal support order shall hereafter be deemed an order for alimony pendente lite if any economic claims remain pending.

---

## SCHEDULE OF DISTRIBUTION

I. *Marital Property*

| | |
|---|---:|
| Net equity in marital residence | 28,269. |
| 1989 Volvo | 2,800. |
| 1990 Volvo sale proceeds | 600. |
| Bank of America account | 1,361. |
| Commerce Bank account | 1,588. |
| Total | 34,618. |

55% to Wife= $19,040.          45% to Husband= $15,578.

*II. Distribution of Marital Property*

| WIFE | | HUSBAND | |
|---|---|---|---|
| Net equity in residence | 28,269. | 1989 Volvo | 2,800. |
| Commerce Bank account | 1,588. | 1990 Volvo sale | 600. |
| | 29,857. | Bank of America acct. | 1,361. |
| | | | 4,761. |

Excess to Wife= $10,817.          Shortage to Husband= ($10,817.)

*III. Marital Debt*

| | |
|---|---|
| Capital One Visa | 1,836. |
| Sears Gold Mastercard | 4,171. |
| Direct Merchants | 11,665. |
| Target Visa | 1,917. |
| Shell Citicorp | 800. |
| 2006 real estate taxes | 2,800. |
| Total | 23,189. |

Wife-50%= $11,595          Husband-50%= $11,595

*IV. Distribution of Marital Debt*

| WIFE | | HUSBAND | |
|---|---|---|---|
| Capital One Visa | 1,836. | Shell Citicorp | 800. |
| Sears Gold Mastercard | 4,171. | | |
| Direct Merchants | 11,665. | | |
| Target Visa | 1,917. | | |
| 2006 real estate taxes | 2,800. | | |
| Total | $22,389.[5] | | |

---

5. Wife is paying $22,389 in debt when her share was $11,595. She is paying $10,794 of Husband's share of the debt. She will thus owe Husband $23 to complete the distribution. In the event that Wife is unsuccessful in removing Husband's liability on this debt within six months, the marital home shall be sold, the secured and unsecured marital debt shall be paid from the proceeds of sale, and the parties shall divide the remaining proceeds 55 percent to Wife and 45 percent to Husband.